# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>*Plaintiff*,<br><br>v.<br><br>KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; and ALEXI GIANNOULIAS, in his official capacity as Secretary of State of the State of Illinois.<br><br>*Defendants*. | Case No. 25-669 |

## VERIFIED COMPLAINT

1. Earlier this year, Illinois passed Senate Bill 2930. *See* 805 Ill. Comp. Stat. §105/114.15. That law forces qualifying nonprofits to gather and publicize a host of sensitive demographic data. To comply with it, nonprofits must ask their staff if they are gay or straight, black or white, transgender or not. Nonprofits must then publish those answers on their own website for years. And when they publish it, the nonprofits must use Illinois' preferred "demographic classifications"—even if they think those classifications are irrational, ahistorical, immoral, or offensive.

2. SB 2930 offends one of the most important rights protected by the Constitution: the freedom of speech. That freedom "'includes both the right to speak freely and the right to refrain from speaking at all.'" *Janus v. AFSCME*, 585 U.S. 878, 892

1

(2018). Though the government cannot "force [its] citizens" to speak, *W.Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), SB 2930 does just that.

3. SB 2930 offends perhaps an even more important right: the constitutional right to be free from state-ordered racial discrimination. By forcing nonprofits to publicize their demographic data, SB 2930 pressures them to discriminate when choosing board members. That discrimination is by design: The law's sponsors drafted SB 2930 to "encourage more diversity" in the nonprofit sector, and Illinois' governor signed it for that very reason. *Johnson Law Highlights Diversity*, Sen. Adriane Johnson (July 1, 2024), perma.cc/V5QJ-ARY3; *Gov. Pritzker Signs LGBTQ+ Affirming Bills*, Gov. JB Pritzker, (June 30, 2024), perma.cc/6SFJ-XVVZ.

4. State-ordered discrimination is "antithetical to the Fourteenth Amendment." *Shaw v. Hunt*, 517 U.S. 899, 907 (1996). And Illinois cannot end-run the Constitution's colorblind commands by "'encourag[ing]'" private actors to discriminate. *Norwood v. Harrison*, 413 U.S. 455, 465 (1973).

5. The Alliance has members who are subject to SB 2930. Because the law is now effective, their injuries are imminent. The Alliance is entitled to declaratory and injunctive relief.

## PARTIES

6. The American Alliance for Equal Rights is a nationwide membership organization dedicated to ending racial and other unlawful preferences nationwide. The Alliance was founded in 2021, and it was approved by the IRS as a 501(c)(3) tax-exempt

2

organization the same year. The Alliance has more than 250 members. Its membership continues to grow.

7. The Alliance's members are actively involved in the organization. Members voluntarily join. They pay dues. They receive regular updates. And they offer input on the Alliance's litigation and other activities.

8. At least two of the Alliance's members—Members A and B—are directly regulated by SB 2930. Members A and B are dues-paying members of the Alliance. Members A and B authorized the Alliance to vindicate their rights in this suit, and the Alliance represents them in good faith.

9. Defendant Kwame Raoul is Illinois' attorney general. As attorney general, Raoul enforces SB 2930. *Perry v. Arlington Heights*, 977 F. Supp. 896, 899 (N.D. Ill. 1997), *aff'd*, 186 F.3d 826 (7th Cir. 1999); *see* 15 Ill. Comp. Stat. §205/4. Raoul also oversees the registration of charitable organizations who are regulated by SB 2930. *See* 225 Ill. Comp. Stat §460/2. Raoul is sued in his official capacity.

10. Defendant Alexi Giannoulias is Illinois' secretary of state. He is charged with administering SB 2930. *See* 805 Ill. Comp. Stat. §105/101.05. He also "promulgate[s] … rules and regulations" to enforce it. §105/101.55(b). Giannoulias is sued in his official capacity.

11. Defendant James Bennett is the director of the Illinois Department of Human Rights. As director, Bennett is responsible for "discharg[ing] the duties" of the Department. 20 Ill. Comp. Stat. §5/5-20. He helps enforce the Act because SB 2930

requires the Department to "prepare and publish a standardized list of demographic classifications" that charitable organizations must use when reporting their demographic information. 805 Ill. Comp. Stat. §105/114.15(b). Bennett is sued in his official capacity.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "aris[es] under the … laws … of the United States."

13. Venue is proper under 28 U.S.C. §1391. Each defendant has an office in the Northern District. And this District is where Members A and B must send the forms required by SB 2930. Separately, a suit against a state official is "no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), and a State "'resides' in every district within its borders," *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).

## FACTS

### I. SB 2930 forces charitable organizations to publicize controversial demographic information on their websites.

14. For nearly a century, governments have dealt with demographic data in one of two ways: Some States don't have any reporting requirements, while others require businesses and nonprofits to confidentially disclose their data to a state or federal agency. *E.g.*, Ga. Code §49-10-5; Mass. Gen. Laws ch. 176J, §17. No government has required nonprofits to *publicly* disclose their demographic data.

4

15. Illinois has decided to innovate. After SB 2930, Illinois is the first—and, so far, only—State to require nonprofits to publicize their demographic data online. *Illinois Playbook: Lawmakers Target Nonprofit Boards*, Politico (June 4, 2024), bit.ly/4hVy90f.

16. Under SB 2930, nonprofits must advertise a host of "Demographic information" on their own website. 805 Ill. Comp. Stat. §105/114.15. Specifically, "charitable organizations" must divulge "the aggregated demographic information of the[ir] directors and officers." §105/114.15(a). To satisfy this mandate, charitable organizations must ask their directors and officers to provide a litany of demographic information, including their "race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity." *Id.* Once that demographic data is catalogued, a charitable organization must advertise the data "on [its] publicly available website." *Id.* Charitable organizations have to keep this data on their website "for at least 3 years." *Id.*

17. SB 2930 also lets the Department of Human Rights define the Act's "demographic classifications." §105/114.15(b). Under the law, the Department must "publish a standardized list of demographic classifications," which it can "update" at any time. *Id.* Those classifications don't have to rely on any scientific, historical, or ethnographic data. *Id.* Instead, the Department considers the views of its "community partners." *Id.* Charitable organizations must use those state-sanctioned definitions—and *only* those definitions—when they report their demographic data. *Id.*

5

18. While the law says that officers and directors can decline to report that demographic information to the nonprofit, §105/114.15(c), it gives nonprofits no such exception or opt out.

## II. SB 2930 was designed to discriminate.

19. One of the reasons SB 2930 compels speech is to promote discrimination. According to the law's main sponsor, SB 2930's "goal is to nudge foundations and big nonprofits to diversify their boards." *Illinois Playbook*, *supra* (remarks of Sen. Johnson). Other legislators echoed that claim, explaining that SB 2930 ensures that a "diverse range of communit[y] nonprofits [are] handled by a diverse range of people." *Gov. Pritzker Signs LGBTQ+ Affirming Bills*, *supra*. Indeed, that pressure to hire minorities based on their demographics (including race) was the law's central "aim." *Government Affairs Roundup for 6.5.24*, Joliet Region (June 5, 2024), perma.cc/CM3Z-EMN8.

20. Governor Pritzker signed the bill for the same reason. By "requir[ing] nonprofits to publicly report the aggregated demographic information about their boards," the Governor explained, SB 2930 "encourage[s] nonprofits to reflect the diversity of the communities they support." *Gov. Pritzker Signs LGBTQ+ Affirming Bills*, *supra*. And by encouraging nonprofits to hire with an eye towards race, SB 2930 "will help ensure that nonprofit boards better reflect the populations they serve." *Illinois Playbook*, *supra* (remarks of Gov. Pritzker).

21. To the law's proponents, the law achieves its demographic goals through coercion. By requiring nonprofits to publicly divulge their demographic data, a proponent of SB 2930 explained, the public can "assess the diversity of foundation boards." *Government Affairs Roundup for 6.5.24*, *supra.* And if a board isn't sufficiently "diverse," the public can pressure those nonprofits "to ensure that their leadership aligns with community demographics." *Id.* Governor Pritzker made the same point when he signed SB 2930: By publicizing a nonprofit's racial "statistics," community leaders can "assess each nonprofit's" racial breakdown and "implement strategies" to change them. *Pritzker Signs LGBTQ+ Affirming Bills in Honor of Pride Month*, *supra.* That pressure campaign wasn't lost on observers either.[*]

---

[*] *Gov. Pritzker Signs LGBTQ+ Affirming Bills in Honor of Pride Month*, Fox Illinois (July 1, 2024), bit.ly/4fPRldQ ("SB2930 requires nonprofits to publicly report the aggregated demographic information about their boards of directors to encourage nonprofits to reflect the diversity of the communities they support."); *Gov. Pritzker Signs 2 Bills in Honor of Pride Month*, WTHI-TV 10 (June 30, 2024), perma.cc/N8U2-KE64 ("SB2930 requires non-profits to publicly report the aggregated demographic information about their boards of directors. It's aimed to encourage those organizations to reflect diversity."); *As Pride Month Ends, Pritzker Signs New LGBTQ+ Bills*, Morrill & Fiedler LLC (archived Nov. 17, 2024), perma.cc/3H5G-V2BF (SB 2930 "help[s] to encourage nonprofits to reflect the diversity of the communities they aim to support."); *id.* (SB 2930 is "intended to … implement strategies to recruit qualified individuals from diverse communities for board service."); *Pritzker Signs New LGBTQ+ Bills*, 92.7 WMay (June 30, 2024), perma.cc/9N7P-WM5C (SB 2930 "help[s] to encourage nonprofits to reflect the diversity of the communities they aim to support."); *id.* (SB 2930 is "intended to … implement strategies to recruit qualified individuals from diverse communities for board service."); *Illinoisans Lobby State Legislators for LGBTQ+ Measures*, Windy City Times (May 10, 2024), perma.cc/6LPV-H55X ("SB 2930 [is] an important bill to make sure [that] nonprofits have boards that reflect the communities in which they serve."); *Johnson Advances Measure to Highlight the Diversity and Inclusion of Non-profits*, Off. of Adriane Johnson (Apr. 10, 2024), perma.cc/R4W9-A6LB (SB 2930 "encourages" diversity).

## III. SB 2930 injures the Alliance's members.

22. The Alliance has members—including Members A and B—who are injured by SB 2930.

23. Members A and B are directly regulated by SB 2930. Members A and B are charitable organizations that are incorporated for philanthropic and civic purposes. *See* 805 Ill. Comp. Stat. §105/103.5(a). Members A and B are recognized as 501(c)(3)s by the IRS. And Members A and B annually contribute more than $1,000,000 in grants to other charitable organizations. Because Members A and B are qualifying charitable organizations, they must file an AG990-IL Charitable Organization Annual Report with the Illinois Attorney General each year. 225 Ill. Comp. Stat. §460/2. Member A has filed that form for at least two decades. Member B has filed that form for nearly a decade.

24. SB 2930 became effective on January 1, 2025. 805 Ill. Comp. Stat. §105/114.15. It makes nonprofits publish their demographic data "[w]ithin 30 days after filing [their] annual AG990-IL Charitable Organization Annual Report." §105/114.5(a). Members A and B will file that report in November 2025.

25. Members A and B believe that officers and directors should be selected based on their experience, skills, and commitment to the organization's mission—not their demographics. Members A and B recruit their officers and directors consistent with that strongly held belief. Members A and B don't classify their staff by race, ethnicity, sexual orientation, or gender identity. They don't ask their staff if they fall in any

8

of those categories. And they don't consider race, ethnicity, sexual orientation, or gender identity when filling their board positions because they think it would be immoral, unlawful, and unwise.

26. SB 2930 compels Members A and B to talk with their officers and directors about sensitive demographic issues. It forces Members A and B to categorize their staff by race, ethnicity, and a host of other categories. It risks outing a board member or officer who feels obligated—as a fiduciary of the organization—to talk about their sexual orientation and gender identity. It makes Members A and B tally demographic information and advertise it on their own websites. And it requires Members A and B to use Illinois' state-sanctioned "demographic classifications." §105/114.15(b).

27. Members A and B don't want to talk about any of that information—not with their staff, the public, or on their websites. Members A and B sincerely believe that they shouldn't have to ask their staff about their demographics. And Members A and B sincerely believe that the demographic composition of their officers and board members is irrelevant to their nonprofits' performance. But SB 2930 requires Members A and B to ask their staff those intrusive questions. And by requiring Members A and B to advertise their demographic information on *their own* websites, SB 2930 makes the public think that those traits *are* relevant and that the demographics of Member A and B's boards *are* important. Members A and B don't want to be compelled to promote that message.

28. Worse yet, Illinois' racial categories are highly controversial. As the Supreme Court recently recognized, the federal government's racial categories—which classify citizens as "African American/Black," "Hispanic/Latino," "Asian American," and the like—are ahistorical, inaccurate, and misleading. *SFFA v. Harvard*, 600 U.S. 181, 216 (2023) (majority opinion); *accord id.* at 291-93 (Gorsuch, J., concurring). Illinois uses the same categories. *See* 20 Ill. Comp. Stat. §50/5 ("Notwithstanding any other provision of law, except as otherwise required by federal law or regulation, whenever a State agency is required by law to compile or report statistical data using racial or ethnic classifications, that State agency shall use the following classifications: (i) White; (ii) Black or African American; (iii) American Indian or Alaska Native; (iv) Asian; (v) Native Hawaiian or Other Pacific Islander; (vi) Hispanic or Latino; or (vii) Middle Eastern or North African.").

29. SB 2930 also pressures Members A and B to discriminate by giving race-based preferences or tips when choosing officers and directors. Because the law requires nonprofits to publicize their demographic data, those organizations will face an onslaught of "public shaming" if activists think their boardrooms aren't diverse enough. *Meland v. Weber*, 2 F.4th 838, 847 & n.4 (9th Cir. 2021). And the only way to avoid that "shaming" is by "mak[ing] discriminatory decisions" when hiring "board members." *Id.* at 847. The government cannot "pressure" anyone to discriminate in that way. *MD/DC/DE Broadcasters Assoc. v. FCC*, 236 F.3d 13, 18-19 (D.C. Cir. 2001).

30. Members A and B are pseudonymous because they fear Illinois will retaliate against them for opposing SB 2930. Members A and B also fear that other organizations will be unwilling to partner with them, potential employees will be unwilling to work for them, and donations will decrease if their participation in this litigation becomes public. Revealing their identities would also expose Members A and B to the very discriminatory pressures they are trying to avoid.

## COUNT I
### Violation of the Fourteenth Amendment

31. The Alliance repeats and realleges each of its prior allegations.

32. The Fourteenth Amendment guarantees that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." §1. This guarantee prohibits discrimination based on race, *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 248 (6th Cir. 2006), and its protections apply equally to everyone, *Adarand Constructors v. Peña*, 515 U.S. 200, 230 (1995).

33. A State "'may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish.'" *Norwood*, 413 U.S. at 465. A State thus violates the Fourteenth Amendment when it encourages private entities to discriminate based on race. *E.g.*, *MD/DC/DE Broadcasters Assoc.*, 236 F.3d at 18-19; *W.H. Scott Const. Co v. Jackson*, 199 F.3d 206, 215 (5th Cir. 1999).

34. SB 2930 violates the Fourteenth Amendment because it encourages charitable organizations like Members A and B to discriminate based on race. By forcing

11

charities to publicize the demographics of their senior leadership, the law pushes them to hire candidates based on race. Groups whose posted demographics are perceived as insufficient will be subjected to "public shaming" by activist groups and other members of the public. *Meland*, 2 F.4th at 847 & n.4. So nonprofits will start discriminating to avoid that type of harassment. *Id.* at 847. And that's not just an unfortunate side effect of SB 2930—it's the whole point. *See Lawmakers Target Nonprofit Boards*, *supra* ("With this bill," outsiders "can see how diverse the boards of directors of foundations are and proactively work … to ensure that their leadership reflects the[ir] communities.").

35. Because SB 2930 encourages racial discrimination, it is presumptively invalid and can be saved only if it satisfies strict scrutiny. *Harvard*, 600 U.S. at 206-07. The law falls short of that high bar. *Id.* at 206.

36. To start, any interest that Illinois puts forward could not be compelling. The Supreme Court "ha[s] identified only two compelling interests that permit resort to race-based government action": "remediating specific, identified instances of past discrimination" and "avoiding imminent and serious risks to human safety in prisons." *Id.* at 207. Illinois does not (and cannot) rely on either of those interests. And a general interest in diversity—like the one SB 2930's proponents have touted—isn't compelling. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 496-500 (1989).

37. Even if Illinois had a compelling interest, SB 2930 is not narrowly tailored to achieving it. Existing antidiscrimination laws are sufficient—or their enforcement

12

could be increased—to remedy actual discrimination in the selection of officers or directors.

38. Private entities that are subject to a law that encourages discrimination have standing to challenge that law. *Meland*, 2 F.4th at 844-47. And the Alliance can seek prospective relief under 42 U.S.C. §1983 to vindicate its members Fourteenth Amendment rights. *E.g.*, *Harvard*, 600 U.S. at 199-201.

39. Because SB 2930 is unconstitutional with respect to race, the rest of the Act must fall. Severability is "a matter of state law." *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). And under Illinois law, a statue isn't severable—and the whole law is therefore unenforceable—if "the legislature would not have passed" the law without the unconstitutional portions. *People v. Mosley*, 33 N.E.3d 137, 152 (Ill. 2015). Here, Illinois wouldn't have passed SB 2930 without the law's race requirements, since race is the main demographic that the law's proponents discussed and the main type of disparity that its proponents want to remedy.

# COUNT II
## Violation of the Free Speech Clause

40. The Alliance repeats and realleges each of its prior allegations.

41. The First Amendment prohibits States from "abridging the freedom of speech." It restricts the States, *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019), and protects charitable organizations like Members A and B, *Citizens United v. FEC*, 558 U.S. 310, 342 (2010).

42. The freedom of speech "'includes both the right to speak freely and the right to refrain from speaking at all.'" *Janus*, 585 U.S. at 892. As a result, the First Amendment "prohibits the government from telling people what they must say." *Rumsfeld v. FAIR*, 547 U.S. 47, 61 (2006).

43. SB 2930 violates the First Amendment. It forces Members A and B to speak about a host of controversial demographic issues that they don't want to discuss, advertise, or endorse. *See id.*; *Riley v. Nat'l Fed. of the Blind of N.C.*, 487 U.S. 781, 795 (1988). It forces Members A and B to talk with their staff about those issues. It forces Member A and B's staff to divulge sensitive demographic information or refuse to answer their boss's questions. It forces Member A and B to classify their staff based on definitions that reflect Illinois' beliefs about race, ethnicity, and gender identity. And it forces Members A and B to advertise that demographic data, on their websites, using only Illinois' state-sanctioned language. 805 Ill. Comp. Stat. §105/114.15(b).

44. Because SB 2930 compels and regulates non-commercial speech, it's subject to strict scrutiny. *See Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989); *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-68 (1983).

45. The law fails strict scrutiny.

46. To start, Illinois does not have a compelling interest in requiring charitable organizations to disclose this demographic data. *See Int'l Dairy Foods Assoc. v. Amestoy*, 92 F.3d 67, 74 (2d Cir. 1996). And it lacks a compelling interest in using overt racial classifications to promote racial diversity. *Harvard*, 600 U.S. at 214-17.

14

47. Even if Illinois' interests were compelling, SB 2930 isn't narrowly tailored. If Illinois wanted to police discrimination, it could require charitable organizations to report their demographics to the State alone. Relying on public pressure cannot be a tailored solution.

48. Even if SB 2930 regulated commercial speech, the law would be unconstitutional. States can require citizens to disclose information only when it is "purely factual and uncontroversial." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 651 (1985). But the government's "racial categories" are anything but factual. *Harvard*, 600 U.S. at 216. And the propriety and accuracy of those categories is hotly debated. *Compare id.* at 291-94 (Gorsuch, J., concurring), *with id.* at 367-68 (Sotomayor, J., dissenting) (debating "these categories"). In fact, discussions surrounding sexual orientation, gender identity, and racial representation involve some of the most "heated political controvers[ies]" of our age. *See CTIA v. Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019).

49. The Alliance can seek prospective relief under 42 U.S.C. §1983 to protect its members' First Amendment rights. *E.g.*, *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1330 (11th Cir. 2024).

## PRAYER FOR RELIEF

50. The Alliance respectfully asks this Court to enter judgment in its favor and to grant the following relief:

15

A. A declaratory judgment that SB 2930 violates the First and Fourteenth Amendments.

B. A permanent injunction barring Defendants from implementing or enforcing SB 2930.

C. A preliminary injunction, if relief cannot be obtained before November 1, 2024, prohibiting Defendants from enforcing SB 2930 against Members A and B.

D. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

E. All other relief that the Alliance is entitled to.

Dated: January 21, 2025                                   Respectfully submitted,

*/s/ Matt Pociask*
Thomas R. McCarthy*
Cameron T. Norris*
Matt Pociask**
R. Gabriel Anderson*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
matt@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice* forthcoming
**Admitted to the Northern District of Illinois

*Counsel for Plaintiff*

## VERIFICATION

I, Edward Blum, declare as follows:

1. I am the President of the American Alliance for Equal Rights, the plaintiff here.

2. I have reviewed this complaint.

3. For the allegations within my personal knowledge, I believe them all to be true.

4. For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited laws, policies, and documents and based on my conversations with members of the American Alliance for Equal Rights, including Members A and B.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 21, 2025

_____
Edward Blum
President of American Alliance for
Equal Rights

17