IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br>    *Plaintiff*,<br>and<br><br>UNITED STATES OF AMERICA,<br>    *Plaintiff-Intervenor*,<br>v.<br><br>STATE OF ILLINOIS; JB PRITZKER, in his official capacity as Governor of the State of Illinois; JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; and ALEXI GIANNOULIAS, in his official capacity as Secretary of State of the State of Illinois,<br>    *Defendants.* | Case No. 1:25-cv-00669<br><br>Judge Coleman |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION FOR PRELIMINARY INJUNCTION (RELIEF REQUESTED BY JULY 1, 2025)**

**I. INTRODUCTION**

  Illinois recently passed Senate Bill 2930 (SB 2930), which requires qualifying nonprofits to publicly disclose race and other demographic data about their officers and directors. 805 Ill. Comp. Stat. § 105/114.15. Illinois requires the gathering and posting of these data "for diversity and inclusion to be embraced within the non-profit sector."[1] To accomplish this, SB 2930 encourages nonprofits to discriminate on the basis of race when selecting their officers and

---

[1] *See Johnson Law Highlights Diversity and Inclusion of Nonprofits*, Sen. Adriane Johnson (July 1, 2024), https://perma.cc/V5QJ-ARY3.

directors. Illinois State Representative Edgar Gonzalez, Jr., admitted as much when stating: "When we can see the data that is shared because of SB 2930, *elected officials and community organizations can be better partners to those nonprofit organizations* that want to *prioritize the recruitment of* talented individuals from our state's *diverse communities*."[2]

The Equal Protection Clause of the Fourteenth Amendment clearly forbids Illinois' use of SB 2930 to encourage nonprofits to discriminate on the basis of race when selecting directors and officers. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (SFFA) (citation and internal quotation marks omitted) ("Eliminating racial discrimination means eliminating all of it."). The Court should enjoin Illinois from enforcing SB 2930 to stop discrimination on the basis of race caused by SB 2930 in violation of the Equal Protection Clause.

## II. BACKGROUND

SB 2930, which went into effect on January 1, 2025, is the first legislation to require nonprofits to gather and post race and other demographic information. SB 2930 requires qualifying nonprofit organizations to maintain "aggregated demographic information of the corporation's directors and officers, including race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity" on their "publicly available website for at least 3 years after it is posted." 805 Ill. Comp. Stat. § 105/114.15(a). To comply with SB 2930, the nonprofits must ask each of their directors and officials their race and other specified demographic information. Each nonprofit must then post the data on its publicly available

---

[2] *Governor JB Pritzker Approves Nation-Leading Policy Regarding Diversity of Nonprofit Boards*, Equality Illinois (July 1, 2024), https://perma.cc/AJ47-NRGX (emphases added).

website "[w]ithin 30 days after filing its annual AG990-IL Charitable Organization Annual Report." *Id.*

A nonprofit must file this annual report "within six months after the close of an organization's fiscal year." Ill. Admin. Code, tit. 14, § 480.50(b). Plaintiff American Alliance for Equal Rights (AAER) Member A and Member B will file those annual reports in November 2025.³ SB 2930 then requires them to post the required race and other demographic data on their websites by December 2025. *See* 805 Ill. Comp. Stat. § 105/114.15(a). Nonprofits that operate on a calendar year must file their annual reports several months earlier, on June 30, 2025. Those nonprofits must post their race and other demographic data in July 2025. Nonprofits whose fiscal years end in the summer or fall would have already been required, or will have soon approaching deadlines, to post the race and other demographic data.

As statements from the statute's supporters and sponsors reflect, SB 2930's *sole* purpose is to increase "diversity." Governor Pritzker, when signing SB 2930, admitted that requiring the collection and public posting of the directors' and officers' demographics is "to encourage nonprofits to reflect the diversity of the communities they support."⁴ According to Governor Pritzker, "*[t]hese statistics . . . are intended* to assess each nonprofit's leadership strengths and opportunities for growth and *to implement strategies to recruit* qualified individuals *from diverse communities* for board service."⁵ And SB 2930's main Senate sponsor, Senator Adriane Johnson stated: "The goal is to *nudge* . . . nonprofits to diversify their boards";⁶ "I want this law to not

---

³ Pl.'s Mot. for Prelim. Inj., Doc. 44, at 5.
⁴ *Gov. Pritzker Signs LGBTQ+ Affirming Bills in Honor of Pride Month*, Gov. Pritzker (June 30, 2024), https://perma.cc/3UHF-SD6N.
⁵ *Id.* (emphases added).
⁶ *Lawmakers Target Nonprofit Boards*, Politico (June 4, 2024), bit.ly/4hVy90f (emphasis added).

only support, but encourage more diversity in [nonprofits]."[7] State Representative Edgar Gonzalez, Jr., SB 2930's main sponsor in the House of Representatives, affirmed this interest, stating that "[t]he diverse range of communities nonprofits serve should be handled by a diverse range of people . . . ."[8] Proponents of SB 2930 also highlighted SB 2930's diversity goals, stating that with these posting requirements, "community groups and community leaders *can see how diverse* the boards of directors of foundations are and *proactively work with foundations to ensure that their leadership reflects the communities*."[9]

As these leaders and supporters have emphasized, SB 2930 encourages nonprofits to consider race in their selections of directors and officers to ensure Illinois, community groups, and community leaders treat them as "better partners." SB 2930 also pressures nonprofits to avoid "public shaming" by considering demographic information and selecting directors and officers on the basis of race rather than merit and the factors relevant to the goals and purposes of the nonprofits. *See Meland v. Weber*, 2 F.4th 838, 847 & n.4 (9th Cir. 2021) ("SB 826 pressures shareholders in other ways as well. Meland alleges that SB 826 also enforces its requirements through 'public shaming' by requiring the California Secretary of State *to publish lists of compliant and noncompliant corporations*.") (emphasis added and citation omitted). SB 2930 thereby forces nonprofits to choose whether to discriminate based on race or to risk lost partnership opportunities and public criticism, if not outright harassment, if they are viewed as lacking sufficient racial and other diversity in their leadership based on their posted data. SB 2930 harms not only the nonprofits intimidated to discriminate on the basis of race, including

---

[7] *See Johnson Law Highlights Diversity and Inclusion of Nonprofits*, supra note 1.
[8] *Gov. Pritzker Signs LGBTQ+ Affirming Bills in Honor of Pride Month*, supra note 4.
[9] *Lawmakers Target Nonprofit Boards*, supra note 6.

both nonprofits punished because they refuse to succumb to the pressure to discriminate,[10] and nonprofits compelled to discriminate, in disregard of their values, to avoid punishment, but also qualified candidates for director and officer positions who are rejected when nonprofits succumb to this pressure.

When SB 2930 went into effect on January 1, 2025, covered nonprofits undoubtedly began considering the impact on their organizations if they are not viewed as sufficiently diverse when they post the required demographic data on their websites this year. As discussed above, posting deadlines have already passed for nonprofits whose fiscal years end in the summer and are rapidly approaching for nonprofits whose fiscal years end in the fall. Given these deadlines, nonprofits have already been forced to decide, and must continue to decide, whether to select directors and officers based on their experience, skills, and organizational commitment[11] or to also consider the race and other demographic data of the candidates to ensure they are viewed as having sufficient diversity in their leadership.

Immediate injunctive relief from SB 2930's discriminatory requirements is needed. Preliminary relief will prevent discrimination against candidates for director and officer positions on the basis of race by nonprofits compelled to consider candidates' race when selecting directors and officers, knowing they will be forced to post—and judged on by both Illinois and the public—that race data. It will also prevent harm to nonprofits, including those who refuse to be intimidated to discriminate on the basis of race and whose race data are not viewed as sufficiently diverse and those who are compelled to discriminate, in disregard of their values, to avoid punishment.

---

[10] *See, e.g.,* Pl.'s Mot. for Prelim. Inj., Ex. B, Doc. 44-2, ¶¶ 10-11, & Ex. C, Doc. 44-3, ¶¶ 10-11.
[11] *See* Pl.'s Mot. for Prelim. Inj., Doc. 44, at 5.

## III. ARGUMENT

To receive a preliminary injunction, the United States must demonstrate "a likelihood of success on the merits," "a likelihood of irreparable harm in the absence of preliminary relief," and "that the balance of equitable interests tips in favor of injunctive relief," including "both the public interest as well as the competing harms that would flow to the parties from a grant or denial of the requested injunction." *Indiana Right to Life Victory Fund v. Morales*, 112 F.4th 466, 471 (7th Cir. 2024) (citation and internal quotation marks omitted). The United States demonstrates each of these factors below.

### A. The United States Is Likely To Succeed on Its Claim That SB 2930 Violates the Equal Protection Clause of the Fourteenth Amendment

SB 2930 requires nonprofits to collect and post race and demographic data on their directors and officers to encourage nonprofits to select their directors and officers based on race and other demographic data. The Equal Protection Clause of the Fourteenth Amendment prohibits Illinois from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]he 'core purpose' of the Equal Protection Clause [is] 'do[ing] away with all governmentally imposed discrimination based on race'" and "'[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities.'" *SFFA*, 600 U.S. at 206, 220 (citations omitted).

Illinois "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation and internal quotation marks omitted). *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 170 (1970) ("[A] State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act."); *see also Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 708

(9th Cir. 1997) (citation and internal quotation marks omitted) ("A law compelling persons to discriminate against other persons because of race is a palpable violation of the Fourteenth Amendment . . . ."); *W.H. Scott Constr. Co., Inc. v. City of Jackson*, 199 F.3d 206, 215 (5th Cir. 1999) (citation and internal quotation marks omitted) (Strict scrutiny applies to a City policy that "induces an employer to hire with an eye toward meeting a numerical target . . . and surely will result in individuals being granted a preference because of their race.").

By requiring nonprofits to publicize demographic data on their directors and officers to encourage diversity, SB 2930 induces, encourages, and compels nonprofits to discriminate based on race when selecting their directors and officers. Illinois intends for the posted demographic data, including race, "to assess each nonprofit's leadership strengths," allow "community groups and community leaders [to] see how diverse the board of directors of foundations are," and "nudge . . . nonprofits to diversify their boards." Nonprofits are expected "to implement strategies to recruit" diverse individuals with elected officials and community organizations becoming "better partners" to those nonprofits that want to "prioritize recruitment" based on candidates' race and other demographic information. As heralded by Governor Pritzker, both the Illinois state senator and representative sponsors of SB 2930, and proponents of SB 2930, SB 2930's ultimate diversity goal aims to racially balance nonprofits' leadership to "reflect the diversity of the communities they support" and "include a diverse range of people."

SB 2930's race-based requirements are subject to strict scrutiny. *See SFFA*, 600 U.S. at 206 (citation omitted) ("Any exception to the Constitution's demand for equal protection must survive a daunting two-step examination known in our cases as 'strict scrutiny.'"). To pass strict scrutiny, Defendants first must show that SB 930 furthers "compelling governmental interests."

*See id.* at 206-07. They must then show that SB 2930's requirements are "narrowly tailored" to achieve the asserted interests. *See id.* at 207. Defendants cannot show either.

Defendants cannot demonstrate either interest permitted for race-based government action recognized by the Supreme Court—"remediating specific, identified instances of past discrimination that violated the Constitution or a statute" or "avoiding imminent and serious risks to human safety in prisons . . . ." *See id.* (citations omitted). Illinois does not profess to remediate any instance of past discrimination in nonprofits' selection of directors and officers through SB 2930. In fact, neither the State nor SB 2930's supporters have expressly alleged, much less established, that actual discrimination by nonprofits in the selection of their leadership has occurred. And "avoiding imminent and serious risk to human safety in prisons" is an interest with no applicability to this case.

As discussed above, statements by SB 2930's main sponsors and by Governor Pritzker admit that Illinois intends for SB 2930 to encourage diversity, but that interest is not compelling for strict scrutiny purposes. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 496 (1989) (plurality opinion) (citation and internal quotation marks omitted) (The desire for greater diversity "was not merely insufficiently compelling to justify a racial classification, it was discrimination for its own sake, forbidden by the Constitution."). Indeed, the Supreme Court has squarely held that generalized goals related to diversity "are not sufficiently coherent for purposes of strict scrutiny" because "it is unclear how courts are supposed to measure [such] goals" and, "[e]ven if these goals could somehow be measured," how the court would "know when [the goals] have been reached, and when the perilous remedy of racial preferences may cease[.]" *SFFA*, 600 U.S. at 214-18.

8

SB 2930 fails strict scrutiny because it does not further a compelling governmental interest, and the Court should not proceed to step two of the strict scrutiny analysis. However, even if SB 2930 furthered a compelling governmental interest, Defendants cannot show SB 2930's race-based requirements are "'narrowly tailored'—meaning 'necessary'—to achieve its interest." *Id.* at 207 (citation omitted). Illinois has taken an overbroad approach of requiring *all* qualifying nonprofits to publicize the demographics of their directors and officers without any evidence of past, or reasonably expected future, discrimination by any nonprofit. *See MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 21-22 (D.C. Cir. 2001). This "sweeping requirement" is not narrowly tailored to achieve a diversity interest. *See id.* Accordingly, the United States is likely to succeed on its Equal Protection Clause challenge to SB 2930.

**B.     Enforcement of SB 2930 Likely Will Cause Irreparable Harm**

Qualifying nonprofits encouraged to discriminate by SB 2930, and candidates for director and officer positions who are not selected because of SB 2930, would be irreparably harmed in the absence of preliminary relief. "[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 229–30 (1995). Further, "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm . . . ." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978); *see also Back v. Carter,* 933 F. Supp. 738, 754 (N.D. Ind. 1996) (citations omitted) ("[E]qual protection rights are so fundamental to our society that any violation of those rights causes irreparable harm. Courts have often found that when a plaintiff in an equal protection case alleged a constitutional injury, the plaintiff satisfied the requirement of irreparable harm."). This irreparable injury from a constitutional violation extends not only to

9

the person being discriminated against but also to organizations encouraged by a statute to discriminate. *Monterey Mech. Co.*, 125 F.3d at 707-08.

In addition to causing irreparable harm by its continuing violation of Equal Protection rights, SB 2930 will harm qualified candidates for director and officer positions who, because they would not contribute to diversity, are not picked by nonprofits making selections based on race. These candidates will lose life and career-changing opportunities to serve on the boards of these nonprofits, including opportunities to impact their communities, broaden their connections and build valuable networks, and gain new expertise and skill sets. SB 2930 will also irreparably harm nonprofits, including AAER Member A and Member B, who must choose whether to give preferential treatment based on race to candidates for directors and officers "to racially balance [their] boards" or to risk harm to their "reputation, [their] mission, and [their] ability to get donations."[12]

### C. The Balance of Equities, Including the Public Interest, Weigh in Favor of a Preliminary Injunction

The balance of equities and the public interest here plainly weigh in favor of the requested injunctive relief. The Court must "consider both 'the public interest' as well as the 'competing harms' that would flow to the parties from a grant or denial of the requested injunction." *Indiana Right to Life Victory Fund*, 112 F.4th at 471 (citation omitted).

Remedying a continuing constitutional violation "certainly would serve the public interest." *Preston*, 589 F.2d at 303 n.3; *see Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("Surely, upholding constitutional rights serves the public interest."). In contrast to the irreparable harm that would result from a continuing violation of the Equal

---

[12] *See* Pl.'s Mot. for Prelim. Inj., Ex. B, Doc. 44-2, ¶¶ 10-11, & Ex. C, Doc. 44-3, ¶¶ 10-11.

Protection Clause if the Court does not enjoin enforcement of SB 2930, Defendants would suffer no harm if the Court enjoins SB 2930's posting requirements. The requested injunction would merely maintain the status quo without a race-based reporting mandate—a status quo which has not caused, and will not cause, Defendants harm. Harm resulting from Defendants' continuing constitutional violation outweighs any vague diversity interest, with no evidence of past discrimination, Defendants may have. The balance of the equities, including the public interest, thereby support preliminary relief.

## IV. CONCLUSION

For the foregoing reasons, the Court should preliminarily enjoin Defendants from enforcing SB 2930 by July 1, 2025.

Dated: April 8, 2025

Respectfully submitted,

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK S. KAMBLI
Deputy Associate Attorney General

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

By: /s/ Hilary F. Pinion
HILARY F. PINION
LOUIS WHITSETT
Senior Trial Attorneys
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-2151
Email: Hilary.Pinion@usdoj.gov

*Attorneys for Plaintiff-Intervenor
United States of America*