**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AMERICAN ALLIANCE FOR EQUAL
RIGHTS,

               Plaintiff,

     v.

KWAME RAOUL, Attorney General of the
State of Illinois; JAMES BENNETT, Director
of the Illinois Department of Human Rights;
and ALEXI GIANNOULIAS, Secretary of
State of the State of Illinois; STATE OF
ILLINOIS; J.B. PRITZKER, Governor of
Illinois;

               Defendants,

     v.

UNITED STATES OF AMERICA

               Plaintiff-Intervenor.

Case No. 1:25-cv-669
Hon. Sharon Johnson Coleman

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6)**

KWAME RAOUL
*Attorney General of Illinois*

Karyn L. Bass Ehler
Elizabeth H. Jordan
Holly F.B. Berlin
Office of the Illinois Attorney General
*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD ................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    I.     AAER lacks standing because it failed to name a litigant who would have standing to sue in their own right. ................................................................................................... 4

    II.    AAER has not shown injury-in-fact for its First Amendment claim. ................................ 8

    III.   AAER has not shown injury-in-fact for its equal protection claims................................ 10

    IV.  AAER fails to state an equal protection claim under Rule 12(b)(6) because SB 2930 does not require differential treatment based on race. ...................................................... 12

    V.    The Secretary of State is not a proper defendant. ............................................................ 14

CONCLUSION ............................................................................................................ 15

## INTRODUCTION

No group is required to structure itself as a charitable organization. But if it wishes to operate in Illinois, solicit donations in Illinois, and receive the substantial tax benefits associated with being a charitable organization, it must comply with certain reporting and governance requirements under state law. One of these requirements, enacted during the 2024 legislative session as SB 2930, is that large grant-making charities—those that report $1 million or more in grants to other charities—collect voluntary, self-reported demographic information from their directors and officers. This information is then aggregated and displayed on the charity's website, if it maintains one: whether a large charity's directors reflect the communities whose interests it purports to advance is relevant to Illinoisans who support that charity.

Nonetheless, the American Alliance for Equal Rights (AAER) seeks to invalidate SB 2930 under the First and Fourteenth Amendments. But AAER claims no injury on its own behalf; instead, it purports to assert these claims on behalf of two of its corporate members that wish to solicit donations in Illinois and benefit from its taxation structure for charities without complying with its reporting requirements. Worse, these corporations seek to achieve this result without identifying themselves or explaining how, with any specificity, SB 2930 injures them. AAER's amended complaint should thus be dismissed: it lacks standing to bring its claims on behalf of anonymous corporations, has not shown a cognizable injury on either claim, and has not stated an equal protection claim for which relief can be granted. Accordingly, Defendants respectfully request that this Court dismiss the Amended Complaint in its entirety under Rule 12(b)(1) and, alternatively, dismiss the equal protection claim under Rule 12(b)(6). Plaintiff-Intervenor the United States likewise has not stated a claim; arguments relating to Intervenor are set forth in Defendants' April 15 Motion to Dismiss, which remains the operative motion with respect to the Complaint in Intervention.

1

## BACKGROUND

In Illinois, corporations—particularly charitable ones—are heavily regulated in exchange for the significant taxation and liability benefits they enjoy. For example, all nonprofit corporations (charitable and otherwise) must maintain a registered office and a registered agent, and disclose those addresses in their articles of incorporation, 805 ILCS 105/105.05(a)-(b); and must file an annual report including—among other things—the names and addresses of their directors and officers and "[a] brief statement of the character of the affairs which the corporation is actually conducting from" a list of authorized purposes, *id.* at 114.05. Nonprofits that are also charitable organizations[1] must file additional registrations with the Illinois Attorney General. *E.g.*, 225 ILCS 460/2(a); 760 ILCS 55/5. In return, charities access a host of benefits including the ability to solicit charitable donations in Illinois, 225 ILCS 460/2, and exemption from certain taxes, 35 ILCS 120/2-5(11); 200/15-65.

The challenged statute, 805 ILCS 105/114.15 (SB 2930), requires "a corporation that reports grants of $1,000,000 or more to other charitable organizations" to collect "the aggregated demographic information of the corporation's directors and officers." *Id.* at 105/114.15(a), (c). This includes "race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity." *Id.* at 105/114.15(a). Any director or officer, however, may "decline to disclose any or all personal demographic information to the corporation." *Id.* at 105/114.15(c). The corporation must "post on its publicly available website, if one exists, the aggregated demographic information of the corporation's directors and officers" that has been disclosed. *Id.* at 105/114.15(a). The Illinois Department of Human Rights (IDHR) must "prepare and publish a

---

[1] "'Charitable organization' means any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such which solicits and collects funds for charitable purposes." 225 ILCS 460/1(a). And "'[c]haritable purpose' means any charitable, benevolent, philanthropic, patriotic, or eleemosynary purpose." *Id.* at § 460/1(f).

2

standardized list of demographic classifications" to be used for reporting aggregated demographic information.[2] *Id.* at 105/114.15(b). SB 2930 was signed on July 1, 2024.

In January, AAER purported to bring suit on behalf of its members, alleging that SB 2930 violates the First and Fourteenth Amendments. Dkt. 1. AAER did not name specific members in its complaint. *Id.* In March, the United States filed the Complaint in Intervention, raising only the Fourteenth Amendment claim. Dkt. 25. In April, Defendants moved to dismiss both complaints, Dkt. 56, and AAER amended its complaint, Dkt. 59. AAER's amended complaint makes four significant changes, none of which affect the legal conclusions this Court should reach. First, AAER adds allegations related to Secretary Giannoulias' ability to promulgate interrogatories to regulated corporations. Am. Compl. ¶ 11. These allegations do not change that the Secretary is not a proper defendant: he has no authority to enforce SB 2930. Second, AAER adds speculative allegations that, even though SB 2930 makes responses to demographic questions optional, directors and officers will feel pressured to provide their demographic information. Am. Compl. ¶¶ 33-35. Where a law makes an action optional, feeling pressured to take that action is not a cognizable injury. Third, AAER adds allegations that SB 2930 will inflict economic injury on its members "in the form of lost time and resources," Am. Compl. ¶ 36, but this allegation alone does not suffice where an organization is seeking to establish standing based on diversion of resources. Finally, AAER adds allegations about the risks to individuals when they publicly bring controversial lawsuits, Am. Compl. ¶¶ 38-41, but these are irrelevant where the entities seeking to proceed anonymously are corporations, not individuals.

## LEGAL STANDARD

---

[2] As of this filing, IDHR has not yet published its list.

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim on which relief can be granted. "[T]o survive dismissal for lack of standing, the plaintiff must . . . allege sufficient factual matter to support the inference that standing exists." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024). At the pleading stage, this means that "the plaintiff must clearly allege facts demonstrating each element of the standing inquiry." *Id.* (quotation marks omitted and alteration adopted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true," to state a "plausible" claim for relief. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (internal quotation marks omitted). Courts "accept as true" "well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

## ARGUMENT

### I. AAER lacks standing because it failed to name a litigant who would have standing to sue in their own right.

"[C]onstitutional limitations on federal court jurisdiction" are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). And "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quotation marks omitted). "[A] plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action," *id.* at

4

381, and ensures that a litigant has "a 'personal stake' in the dispute," *id.* at 379.

Where, as here, a party invokes associational standing, it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Dismissal is warranted here because AAER fails to name a member who has standing to sue on its own behalf and, alternatively, because the members relied on by AAER do not sufficiently allege an injury-in-fact.

AAER's amended complaint must be dismissed because it fails to name a member that would have standing to bring this case in its own right, which is not only required by *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), but also consistent with the Seventh Circuit's longstanding disfavor for "pseudonymous litigation," *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 492 (7th Cir. 2024); *see also Doe v. City of Chicago*, 360 F.3d 667, 669-70 (7th Cir. 2004) (allowing anonymity for individual persons only in the rarest of circumstances).

In *Summers*, the Supreme Court concluded that the plaintiffs—several environmental groups—lacked standing to bring their claims because they failed to "*name* the individuals . . . harmed by" the challenged programs. 555 U.S. at 498-99 (emphasis added). In reaching this decision, the Court rejected the notion that the "requirement of naming the affected members" could not be dispensed with based on a lesser showing—there, an attempt by plaintiffs to rely on the statistical probability that an unidentified member would visit the national forests at issue and suffer concrete harm as a result of the challenged federal regulations. *Id.* Because AAER fails to name any members harmed by SB 2930, it does not satisfy *Summers*.

The fact that *Summers* involved an appeal from summary judgment, rather than a Rule

12(b)(1) motion, does not excuse this failure. Although the Seventh Circuit has not yet squarely decided whether *Summers*'s naming requirement applies at the pleading stage, it has identified several factors that support that view. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1010-11 (7th Cir. 2021). In *Prairie Rivers*, the court explained that "a defendant should be able to make its own standing challenge as soon as the Federal Rules of Civil Procedure permit it to do so—at the pleadings, not summary judgment." *Id.* at 1010. Applying the naming requirement at the pleading stage would advance that goal because to do otherwise "would effectively shift a defendant's Rule 12(b)(1) motion into summary judgment, permitting associational plaintiffs to proceed to discovery in nearly every case." *Id.* Furthermore, as the court noted, requiring a plaintiff to name an injured member is not an unreasonable burden. *Id.* The court also recognized that this view is consistent with other circuits. *Id.* at 1011.

That AAER should be required to name its members is further underscored by the fact that these members are corporate entities, and not individuals in need of protection from identifiable, imminent harm. *See Mueller v. Raemisch*, 740 F.3d 1128, 1136 (7th Cir. 2014). Indeed, as the Seventh Circuit has made clear, anonymity is a device used for *individual persons* only in "exceptional circumstances." *Doe v. City of Chicago*, 360 F.3d at 669-70. For example, status as a minor justifies anonymity in court, as does "[a] substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court." *Doe v. Tr. of Ind. Univ.*, 101 F.4th at 491. Indeed, the primary example in AAER's amended complaint of litigants proceeding anonymously involves the *individuals* involved in the *Students for Fair Admissions* case. Am. Compl. ¶ 40.

AAER incorrectly analogizes its desire for anonymity to the parties and district court keeping the individual student members of Students for Fair Admission ("SFFA") anonymous in

*SFFA v. Harvard*. Am. Compl. ¶ 41. The footnote AAER cites highlights the differences between that case and this one. *See SFFA v. Harvard*, 2023 WL 3126414, at *6 n.4 (citing *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013)). There, the court noted that individual applicants to Harvard and members of SFFA who did not participate in the litigation did not consent to have their identities revealed, and may not have supported the litigation, and the case depended on statistical data rather than the feelings and preferences of its members. *Id.* Here, the two member organizations on which AAER purports to base its standing clearly support the case—their boards have authorized the case, 805 ILCS 105/108.05, and their leadership has effectively attempted to testify, voluntarily pulling themselves into the public sphere to discuss their views. In any event, a footnote in an unpublished district court opinion in the First Circuit is not binding on this Court.

AAER has provided no support for its allegation that *these* organizations in *this* case face a *substantial* risk of physical harm. The allegations in AAER's amended complaint primarily suggest that AAER's justification for its member organizations' anonymity is based on fears of reputational harm to the organizations. Am. Compl. ¶ 37.[3] But as the Seventh Circuit reaffirmed in March, embarrassment or reputational harm (which would include decreased donations and difficulty recruiting) does not sustain a request for anonymity. *Doe v. Young*, No. 24-2871, 2025 WL 927320, at *2 (7th Cir. March 27, 2025) (citing *Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 721-24 (7th Cir. 2011)) (affirming a District Court's order removing a pseudonym and requiring dismissal if Doe elected not to name himself on remand).

---

[3] AAER makes the conclusory allegation that its members fear retaliation from the State if they disclose their identities, Am. Compl. ¶ 37, but it has provided no basis to believe that such retaliation would occur. Such a bare and hypothetical assertion does not suffice. *Cf Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009) (an assertion of a "'campaign of retaliation' against plaintiff could not survive motion to dismiss); *Jensen v. Pollard*, 924 F.3d 451, 455 (7th Cir. 2019) ("We have long held that courts should presume that states will comply with equitable remedies in good faith.").

In short, proceeding anonymously is inappropriate and unjustified in this case: AAER's speculative harms do not overcome the presumption of the public's access to the parties and cases before the courts. AAER has thus not established standing.

## II.     AAER has not shown injury-in-fact for its First Amendment claim.

AAER's First Amendment claim should also be dismissed for the independent reason that it has failed to show its members are suffering injury-in-fact, "the first and foremost of standing's three elements." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (cleaned up). Establishing injury requires showing that the plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation marks omitted). Anonymous member organizations A and B challenge the requirement that they *collect* voluntarily provided demographic information and then *post* aggregated responses they receive on their websites. [4] But neither of these provisions rise to the level of inflicting a cognizable injury for standing purposes. Failure to plead injury-in-fact is fatal to a claim under Federal Rule of Civil Procedure 12(b)(1). *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015).

At the threshold, AAER conceded in its original, verified complaint and motion for preliminary injunction that it would be constitutional for Illinois to require it to collect demographic information and submit it to the state. Compl. ¶ 17; Mot. for Prelim. Inj. at 10. AAER cannot erase this concession by amending its complaint. *See Towne v. Donnelly*, 44 F.4th 666, 675-76 (7th Cir. 2022). AAER is correct: the requirement to collect optional demographic information is not an invasion of a legally protected interest. Indeed, under Illinois law, an organization and its board are one and the same; the idea that a board is legally distinct from its

---

[4] AAER purports to challenge SB 2930 in its entirety. But AAER's amended complaint appears to take issue only with the provisions relating to race, ethnicity, sexual orientation, and gender identity. *See* Am. Compl. ¶¶ 25-27.

corporation "is a misconception of what a board of directors is and how it functions within the corporate structure." *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280 (Ill. App. 2d 2005) (quotation marks omitted). Plaintiff's claim here makes no sense: it objects to a legal entity's obligation to collect *its own* data. This is not a cognizable injury.

AAER's remaining allegations of injury are based on a mischaracterization of SB 2930's requirements. There is no requirement that the organizations "discuss, advertise, or endorse" demographic categories, nor does the law "force" charities to "talk with" their "staff" about the classifications. Am. Compl. ¶¶ 26, 54. Regulated charities also need not "classify their staff" in any way. *Id.* ¶ 54. On the contrary, the law requires only that certain corporate entities *collect* voluntary self-reported demographic data from their *directors* and *officers*. 805 ILCS 105/114.15. And, in any event, these actions (even if they were required) are part of the process of collecting data, which AAER has effectively admitted is constitutional.

Relatedly, the alleged injury arising from SB 2930's requirement to post aggregated demographic information on the members' websites, when properly construed, is merely conjectural and hypothetical, not actual or imminent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992) ("'imminence' . . . ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending" (quotation marks omitted)). SB 2930 itself makes it *optional* for directors and officers to provide their demographic information to their organization. And if the directors and officers provide no such information, then the statute does not require the organizations to post anything at all on their websites, and there is no injury to the anonymous organizations. AAER floats a variety of theories under which a director or officer might feel compelled to provide demographic information against their wishes, Am. Compl. ¶ 35, but such speculation is not sufficient to

allege an injury. *See, e.g.*, *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 642 (7th Cir. 2024) (affirming a District Court's dismissal for lack of standing where the stated injury was highly speculative and attenuated). And, regardless, directors' and officers' feelings are immaterial where the law at issue does not compel them to speak. *See Speech First, Inc. v. Killeen*, 968 F.3d 628, 640-41 (7th Cir. 2020) (students failed to demonstrate standing to bring First Amendment claim where the basis for the claim was fear of reprisal for declining voluntary interview). In other words, AAER has not alleged an imminent, non-hypothetical, non-conjectural injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) ("[R]espondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending.").

AAER's amended complaint gestures at a new theory of standing: its members' alleged economic injury from spending "time and resources" collecting demographic information and updating their websites. The theory that "standing exists when an organization diverts its resources in response to a defendant's actions" is "incorrect." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). In fact, "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing." *Id.* at 394. The organization must also show that the diversion of resources "interfere[s]" with its "core business activities." *Id.* at 395; *see also Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 4721512, at *6 (N.D. Ill. Oct. 28, 2024) (slip copy) (holding that an organization did not have standing based on its diversion of resources to "research the State's voter registration practices and contact the State to obtain voter registration data"). Accordingly, AAER has failed to adequately allege standing for its First Amendment claim, and that claim should be dismissed.

### III.     AAER has not shown injury-in-fact for its equal protection claims.

The Court should dismiss AAER's equal protection claim for the additional reason that

AAER has not shown injury-in-fact for that claim. Injuries must be concrete and particularized, and more than hypothetical. *See*, *e.g.*, *Spokeo, Inc.*, 578 U.S. at 338. An anticipated future injury may be sufficiently imminent to establish standing, but "[s]weeping pre-enforcement facial invalidation of law is highly disfavored," and injuries must be "certainly impending." *Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 506 (7th Cir. 2024) (affirming a District Court's dismissal of a pre-enforcement facial challenge where the stated future injury was highly attenuated and speculative), *cert denied*, 145 S. Ct. 14 (2024).

AAER's equal protection claim relies on a tenuous chain of hypothetical events, each more unreasonable than the last, to make the claim that this race-neutral law nonetheless violates the Fourteenth Amendment by encouraging private parties to discriminate based on race. AAER rests the entirety of its equal protection claim on the idea that SB 2930 "encourages charitable organizations . . . to discriminate based on race" due to organizations' desire to avoid hypothetical "public shaming" by unnamed "activist groups" that might perceive an organization's board demographics as "insufficient." Am. Compl. ¶¶ 45. This is highly attenuated and does not confer Article III standing. *See*, *e.g.*, *Bost*, 114 F.4th at 642; *City of South Miami v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023) ("This highly attenuated chain of possibilities which rests on speculation about the decisions of independent actors . . . does not satisfy the requirement that threatened injury must be certainly impending[.]" (internal citations omitted)); *South Carolina v. United States*, 912 F.3d 720, 727 (4th Cir. 2019) ("The Supreme Court has repeatedly held that an alleged harm is too speculative to support Article III standing when the harm lies at the end of a highly attenuated chain of possibilities." (cleaned up)). "The risk of a future injury must be substantial, not just conceivable." *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629 (4th Cir. 2023). AAER has not identified any

impending and certain injuries flowing from these voluntary disclosures, so it does not have standing. The Court should dismiss the equal protection claim in the Amended Complaint.

**IV.     AAER fails to state an equal protection claim under Rule 12(b)(6) because SB 2930 does not require differential treatment based on race.**

AAER has not sufficiently alleged an equal protection violation, and as such, the court should dismiss Count One of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). In relevant part, the Equal Protection Clause prohibits governments from racially discriminating by providing that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Government decision-making based on an individual's race—whether preferential or prejudicial—implicates the Equal Protection Clause. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989). For example, an arbitrary government-mandated quota requiring corporations to hire or fire particular numbers of individuals based on their race would implicate the Equal Protection Clause. *See, e.g.*, *id.* at 486. A race-based government decision may survive judicial review if it complies with the twin prongs of strict scrutiny: it must be narrowly tailored to meet a compelling government interest. *SFFA v. President and Fellows of Harvard College*, 600 U.S. 181, 206-07 (2023).

Here, AAER has not sufficiently pled that the challenged law implicates the Equal Protection Clause by requiring decision-making based on race. On the contrary, AAER effectively concedes that it does not. *See* Am. Compl. ¶ 1 (describing AAER's understanding of SB 2930's demographic disclosure requirements, and failing to cite any aspect of the law that directs entities' decision-making). And that concession is right. As explained, SB 2930 requires only the collection and publication of voluntarily provided aggregated data; it imposes no requirement on the government (or anyone else) to make any decision based on that information. As the Equal Protection Clause's central purpose is "the prevention of official conduct

12

discriminating on the basis of race," *Washington v. Davis*, 426 U.S. 229, 239 (1976), AAER's failure to satisfy this threshold requirement is fatal to its claim.[5]

AAER sets forth a series of future hypothetical events and claims that this race-neutral law could violate the Equal Protection Clause if, as a result of this attenuated series of events, it would encourage private parties to discriminate based on race. As noted, AAER's amended complaint alleges that by being required to collect and publish data on the demographics of their senior leadership, entities could be viewed as having "insufficient" demographics, which could lead to "'public shaming' by activist groups and others," which could cause the entities to discriminate to avoid potential harassment. Am. Compl. ¶ 45. These allegations are insufficient.

First, the allegations are hypothetical and conclusory. The amended complaint does not explain how or why public shaming—if it even occurs—would plausibly relate to a constitutional violation on the part of Defendants. No case law connects the Equal Protection Clause to "public shaming" of an entity following that entity's compliance with a race-neutral state law. Second, the legal authority cited in the amended complaint is inapposite. For instance, the amended complaint cites a footnote from a Ninth Circuit case in support of its "public shaming" arguments. *Meland v. Weber*, 2 F.4th 838, 847 & n.4 (9th Cir. 2021). But that case is not analogous to the facts at hand; the law at issue in *Meland* imposed a *quota* on non-profit boards. *See* Cal. Corp. Code § 301.3. Here, SB 2930 merely requires disclosure of voluntary, self-reported board member information. Unlike the law in *Meland*, SB 2930 requires no decision-making based on a protected class. Likewise, the other cases cited by AAER, which are not binding, relate to government enforcement of racial preferences—not the voluntary and race-neutral demographic disclosures here. *See MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13 (D.C.

---

[5] Because the amended complaint has not identified any race-based decision-making mandated or encouraged by SB 2930, strict scrutiny does not apply, and this motion will not address whether SB 2930 meets its twin prongs.

Cir. 2001); *W.H. Scott Const. Co., Inc. v. City of Jackson, Miss.*, 199 F.3d 206 (5th Cir. 1999).

Relatedly, the complaint cites cherry-picked language from *Norwood v. Harrison*, 413 U.S. 455 (1973), a case holding that a State cannot use financial incentives to impede desegregation of schools. It does not endorse AAER's theory that disclosure laws like SB 2930 impermissibly encourage discrimination. On the contrary, the *Norwood* Court explicitly directed the lower court to order the collection and reporting of racial and religious demographics of private school students in an effort to prevent discrimination. *See* 413 U.S. at 471 ("The District Court can appropriately direct the appellees to submit for approval a certification procedure under which" schools applying for state funding must "state the number of its racially and religiously identifiable minority students . . . ."). Moreover, the amended complaint improperly seeks an injunction of the *entire* state law—including enjoining disclosures related to disability status, gender, veteran status, and sexual orientation—based on its arguments related to race.

The equal protection claim rests on the notion that providing Illinoisans with information regarding the charities they support may cause donor behavior to change, which may cause AAER's member organizations and others to racially discriminate in response. Any resulting racial discrimination would be fairly traceable to AAER's members, not the State. As such, the court should dismiss the equal protection claim.

**V.      The Secretary of State is not a proper defendant.**

AAER named the Illinois Secretary of State (Secretary) as a defendant in this action, but the requirements of causation and redressability are not satisfied as to the Secretary. To establish standing to sue a particular defendant, a plaintiff must allege "that the defendant[] caused [its] injuries and that the relief [it] seeks will redress them." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 911 (E.D. Wis. 2002). And "in order to meet these elements, the named defendants must

14

have the power under state law to enforce the statute against [the plaintiff]." *Id.*

The Secretary has the power "to administer" the Not-For-Profit Corporations Act, and "to perform the duties therein imposed." 805 ILCS 105/101.05. But because SB 2930 requires no administration and imposes no duties on the Secretary, the Secretary is not a proper defendant in this action. SB 2930 itself does not assign any enforcement or regulatory role to the Secretary. *See* 805 ILCS 105/114.15. The Secretary does not collect demographic information pursuant to SB 2930, nor do these nonprofits report this information to the Secretary (or to any state entity). The Secretary may propound interrogatories regarding compliance with the Not-For-Profit Corporations Act, *id.* at 105/101.35, but he is empowered to take enforcement action against nonprofits only for specified reasons; noncompliance with SB 2930 is not one of those. *See* 805 ILCS 105/112.35. At most, the Secretary may refer suspected noncompliance with SB 2930 to the Attorney General. *Id.* at 105/101.35. In fact, state law does not permit the Secretary to enforce SB 2930 in any way, and, therefore, any harm that AAER alleges is neither traceable to actions of the Secretary, nor redressable by an injunction prohibiting the Secretary from enforcing SB 2930. *See Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017); *see also Jacobson v. Fla. Sec. of State*, 957 F.3d 1193, 1207 (11th Cir. 2020) (any harm from order of candidates listed on ballot not traceable to Secretary where Secretary had no power to prescribe the order of candidates). The Secretary should therefore be dismissed from this action.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint under Rule 12(b)(1) and, alternatively, dismiss the equal protection claim under Rule 12(b)(6). Defendants also respectfully request that this Court dismiss the Secretary.

Dated: May 6, 2025

KWAME RAOUL
*Attorney General of Illinois*

/s/ *Elizabeth Jordan*
Karyn L. Bass Ehler
Elizabeth H. Jordan
Holly F.B. Berlin
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
karyn.bassehler@ilag.gov
elizabeth.jordan@ilag.gov
holly.berlin@ilag.gov
*Counsel for Defendants*

16