**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | |
| Plaintiff, | Case No. 1:25-cv-669 |
| | Hon. Sharon Johnson Coleman |
| v. | |
| KWAME RAOUL, Attorney General of the State of Illinois; JAMES BENNETT, Director of the Illinois Department of Human Rights; and ALEXI GIANNOULIAS, Secretary of State of the State of Illinois; STATE OF ILLINOIS; J.B. PRITZKER, Governor of Illinois; | |
| Defendants, | |
| v. | |
| UNITED STATES OF AMERICA | |
| Plaintiff-Intervenor. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S AND INTERVENOR'S MOTIONS FOR PRELIMINARY INJUNCTION**

KWAME RAOUL
*Attorney General of Illinois*

Karyn L. Bass Ehler
Elizabeth H. Jordan
Holly F.B. Berlin
Office of the Illinois Attorney General
*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................... 3

    I.    Movants are unlikely to succeed on the merits of their claims because they lack standing. 3

        a.    Plaintiff's declarations are significantly deficient and cannot confer associational standing. ................................................................................................................ 4

        b.    Neither Plaintiff nor Intervenor have shown injury-in-fact. ........................................ 6

            i.    Movants have not shown injury for their Equal Protection claim. ........................... 6

            ii.    Plaintiff has not shown injury for its First Amendment claim. .................................. 7

    II.    Even if Movants satisfy Article III standing, they are not entitled to a preliminary injunction because their claims fail on the merits. ...................................................... 8

        a.    Movants are unlikely to succeed on the merits of their Equal Protection Claims. ......... 9

        b.    Plaintiff is unlikely to succeed on the merits of their First Amendment claim. ............ 12

    III.    Movants have not shown irreparable harm. .............................................................. 16

    IV.    An injunction will not serve the public interest, and the balance of equities tips in Defendants' favor. .................................................................................................... 18

    V.    Movants are not entitled to the scope of the injunction they seek. .................................. 19

CONCLUSION ................................................................................................................ 20

i

## TABLE OF AUTHORITIES

### Cases

*Alliance for Fair Board Recruitment v. SEC*, 125 F.4th 159 (5th Cir. 2024) ................................ 10

*Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328 (7th Cir. 1980) ......................................................... 18

*Ananias v. St. Vincent Med. Grp., Inc.*, No. 1:22-cv-1723, 2022 WL 17752208 (S.D. Ind. Dec. 19, 2022) ..................................................................................................................... 4

*Bolger v. Youngs Drugs Prods. Corp.*, 463 U.S. 60 (1983) ........................................................ 14

*Bost v. Ill. State Bd. of Elections*, 114 F.4th 634 (7th Cir. 2024) ................................................. 7

*Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821 (7th Cir. 1998) ......................... 3

*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) ...................................................... 11

*City of South Miami v. Governor*, 65 F.4th 631 (11th Cir. 2023) ................................................ 7

*CTIA v. City of Berkeley, Cal.*, 928 F.3d 832 (9th Cir. 2019) ..................................................... 13

*Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) ...................................... 15

*Do No Harm v. Pfizer Inc.*, 126 F.4th 109 (2nd Cir. 2025) ......................................................... 6

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .............................................................. 8

*Gabiola v. Sarid*, No. 16-cv-2076, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) ...................... 14

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019) ................................... 3

*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977) ..................................................... 13

*Hearne v. Bd. of Educ. of Chi.*, 185 F.3d, 770  (7th Cir. 1999) .................................................. 19

*Hudson v. Preckwinkle*, 13-cv-8752, 2015 WL 1541787 (N.D. Ill. Mar. 31, 2015) ..................... 5

*Ill. Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ................................................... 3

*Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ............................................ 3

*Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014) ............................................... 14

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) ........................................... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 4, 8

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................. 3

*MD/DC/DE Broadcasters Association v. FCC*, 236 F.3d 13 (D.D.C. 2001) ............................... 10

*Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021) ........................................................................... 10

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ........................................................................ 16

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) ............................................................................. 3

*Prairie Rivers Network v. Dynergy Midwest Generation, LLC*, 2 F.4th 1002 (7th Cir. 2021) ........ 6

*Reiff v. Calumet City*, No. 10-cv-5486, 2014 WL 4460457 (N.D. Ill. Sept. 10, 2014) ................ 16

*Second City Music, Inc. v. City of Chicago,* 333 F.3d 846 (7th Cir. 2003) .................................. 18

*See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) ...................................................... 16

*Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) ........................................................... 18

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ................................................. 4, 6, 8

*Spokeo Inc. v. Robbins*, 578 U.S. 330 (2016) ........................................................................... 6

*Spuhler v. State Collection Servs.*, 983 F.3d 282 (7th Cir. 2020) ................................................ 4

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) .......................................................................................................................... 12

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................................... 6

*Tark ibn Ziyad Academy v. Islamic Relief USA*, 794 F. Supp. 2d 1044 (D. Minn. 2011) ............ 18

*Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017) ....................................................... 20

*Vega v. Chi. Park Dist.*, 605 F. Supp. 3d 1086 (N.D. Ill. 2022) ...................................... 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ................. 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................................... 16

*Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640 (7th Cir. 2013) ................................ 15

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985) ..... 12

**Statutes**

805 ILCS 105/114.15 ............................................................................................. 1, 2, 8

**Other Authorities**

U.S. Census Bureau, "Measuring Race and Ethnicity Across the Decades: 1790-2010," https://www.census.gov/data-tools/demo/race/MREAD_1790_2010.html ............................. 13

**INTRODUCTION**

Illinois law requires that large grant-making charities, whose directors and officers opt-in to disclose certain demographic information, provide aggregated demographic data on the charities' publicly available websites. Importantly, the law includes a key provision that permits directors and officers to opt-out of disclosing any or all of the still yet-to-be-finalized definitions of demographic categories, including race, ethnicity, gender, gender identity, sexual orientation, disability status, and veteran status. 805 ILCS 105/114.15 (SB 2930). Although the law is not yet being enforced, Plaintiff American Alliance for Equal Rights and Intervenor the United States (Movants) seek sweeping preemptive relief against Defendants, several of whom have no authority to enforce SB 2930. Yet the relief they seek—not providing the demographic information to the public—is already baked into the statute, because directors and officers can opt out of providing it.

Movants' evidence in support of their request for the extraordinary remedy of a preliminary injunction is meager: three documents—two of which are unsworn, anonymous, and deficient, and the third irrelevant. On their Equal Protection claims, Movants have not shown that an injury is likely at all, much less that it is irreparable. And Movants are also unlikely to succeed on the merits: SB 2930 is a race neutral law and does not have a discriminatory effect or a discriminatory purpose, so it does not violate the Equal Protection Clause. On the First Amendment claim, Plaintiff similarly has not shown any likelihood that its members will be compelled to speak—Plaintiff even conceded that collecting such information would not constitute a First Amendment violation. Further, publicly reporting the collected information is factual, uncontroversial, and is sought on an opt-in basis in the context of soliciting financial

1

donations from the public. The law easily satisfies rational basis review. This Court should deny preliminary injunctive relief.

## BACKGROUND

SB 2930 requires "a corporation that reports grants of $1,000,000 or more to other charitable organizations" to collect "the aggregated demographic information of the corporation's directors and officers." *Id.* at 105/114.15(a), (c). This includes "race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity." *Id.* at 105/114.15(a). The law also provides, however, that any director or officer may "decline to disclose any or all personal demographic information to the corporation." *Id.* at 105/114.15(c). If the information is voluntarily provided by the directors and officers, only then does the law require a corporation to "post on its publicly available website, if one exists, the aggregated demographic information of the corporation's directors and officers" that has been disclosed to the corporation, *id.* at 105/114.15(a). If no demographic information is disclosed by the directors and officers, no public posting is necessary. *See generally id.* The Illinois Department of Human Rights (IDHR) must "prepare and publish a standardized list of demographic classifications" to be used for reporting aggregated demographic information. *Id.* at 105/114.15(b). As of this filing, IDHR has not published its list.

In January, AAER purported to bring suit on behalf of its anonymous members, alleging that SB 2930 violates the First and Fourteenth Amendments. Dkt. 1. In March, the United States filed the Complaint in Intervention, alleging a Fourteenth Amendment claim. Dkt. 25. In April, Movants filed the instant motions, Dkt. 44; Dkt. 49, and Defendants filed a motion to dismiss the complaints, Dkt. 55, and memorandum in support, Dkt. 56, on April 15. On April 22, AAER filed an amended complaint, Dkt. 59. On May 6, Defendants moved to dismiss AAER's amended

2

complaint, Dkt. 68, and filed a memorandum in support, Dkt. 69.[1] Defendants now file this brief in opposition to Movants' motions for preliminary injunction.

## LEGAL STANDARD

Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks omitted). A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (quotation marks omitted). "An applicant for preliminary relief bears a significant burden," including "a demonstration of how the applicant proposes to prove the key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

Courts assessing a motion for preliminary injunction evaluate four factors: whether the movant has "establish[ed] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 762 (quotation marks omitted). If the movant satisfies these requirements, the court must weigh the harm that the movant will incur without an injunction against the harm to the party in opposition if one is entered. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). This analysis is done on a "sliding scale"— if a movant is less likely to win on the merits, the balance of equities must weigh more heavily in its favor to support preliminary injunctive relief. *Id.*

## ARGUMENT

**I.      Movants are unlikely to succeed on the merits of their claims because they lack standing.**

---

[1] The United States did not file an amended complaint. As a result, Defendants' original motion to dismiss and memorandum in support, Dkts. 55, 56, stand with regard to the United States' complaint. This brief references both motions to dismiss.

As Defendants explained in their supporting memoranda to their motions to dismiss, Dkt. 56 at 9-10; Dkt. 69 at 3-12, Movants failed to sufficiently allege the requirements of Article III standing, and their complaints should be dismissed. These deficiencies have become all the more apparent given Movants' failure to substantiate their allegations with appropriate proof. The required proof for purposes of Article III standing increases at each stage of the litigation. *See Spuhler v. State Collection Servs.*, 983 F.3d 282, 285 (7th Cir. 2020); *Ananias v. St. Vincent Med. Grp., Inc.*, No. 1:22-cv-1723, 2022 WL 17752208, at *4 (S.D. Ind. Dec. 19, 2022). At the preliminary injunction stage, the organization must "set forth by affidavit or other evidence specific facts, rather than general factual allegations of injury." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) (quotation marks omitted). Because Movants have failed to do so here, they are not likely to succeed on the merits of their claim, and their motions should be denied.

### a. Plaintiff's declarations are significantly deficient and cannot confer associational standing.

In support of its motion for preliminary injunction, Plaintiff submitted three documents styled as declarations. *See* Pl. Mot. Prelim. Inj. Ex. 1-3. One of those, from the President of AAER, is irrelevant for purposes of Article III standing because AAER brings suit on behalf of its *members*, not itself. In keeping with Article III's case-and-controversy requirement, and the prohibition of generalized grievances, the Court should not consider statements by the President of AAER regarding a law that does not regulate him or his organization. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992) (finding no Article III case or controversy when a plaintiff "claim[s] only harm to his and every citizen's interest in proper application of the Constitution and laws, and seek[s] relief that no more directly and tangibly benefits him than it does the public at large.").

4

The other two documents submitted by AAER, purportedly declarations from anonymous officers of its anonymous member organizations, are severely deficient and should be stricken from the record. *See* Defs. Mot. to Strike, Dkt. 71. Plaintiff's purported declarations are anonymous, unsworn, without reference to penalty of perjury, and are unsigned beyond apparently hand-printed notations of "Officer A" and "Officer B" at the end of the documents. These documents thus fail to satisfy the requirements of 28 U.S.C. § 1746, so they have no probative value and should be stricken. *See* Defs. Mot. to Strike.

If AAER's member organizations wish to challenge a state law, they and their officers must be subject to the same penalties as the defendants they have haled into federal court. Otherwise, this Court should not consider their purported declarations as evidence supporting their motion for preliminary injunction. *See Hudson v. Preckwinkle*, 13-cv-8752, 2015 WL 1541787, at *13 (N.D. Ill. Mar. 31, 2015) ("[T]he Court finds little reason to afford any significant weight to these unsworn and unauthenticated statements. . . . There is no explanation in the record for why Plaintiffs' counsel would go through the trouble of obtaining the statements without the added step of having them sworn as being the truth." (collecting cases)). Given that the entirety of Plaintiff's motion—and much of Intervenor's motion—relies on the assertions made in documents that have no evidentiary value, this Court should deny the motions.

Even if this Court were to overlook these deficiencies, Plaintiff's unsworn documents are insufficient to confer standing for an additional reason: they do not name the members that Plaintiff purports to represent via associational standing. The weight of authority suggests that an organizational plaintiff like AAER must name at least one member that has standing in order to proceed with its claims. *See* Defs. Memo. in Supp. Mot. to Dismiss, at 3-7. And at the preliminary injunction stage, that authority is clear. An organization's "burden to demonstrate

standing in the context of a preliminary injunction motion is 'at least as great as the burden of resisting a summary judgment motion.'" *Speech First*, 968 F.3d at 638 ; *see also Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 122 (2nd Cir. 2025). In other words, Plaintiff must name a member who would have standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009); *see also Prairie Rivers Network v. Dynergy Midwest Generation, LLC*, 2 F.4th 1002, 1010-11 (7th Cir. 2021). Because Plaintiff has failed to identify a member under this standard, it has not satisfied its burden at this stage in the proceedings.

### b. Neither Plaintiff nor Intervenor have shown injury-in-fact.

Furthermore, the motions should be denied because neither Plaintiff nor Intervenor have adequately demonstrated injury that rises to "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quotation marks omitted). For the same reasons that Movants' complaints should be dismissed, *see* Dkts. 56; 69, they are not entitled to a preliminary injunction.

### i. Movants have not shown injury for their Equal Protection claim.

Like their complaints, Movants' motions for preliminary injunction rely not on concrete facts demonstrating that SB 2930 discriminates based on race, but on a tenuous chain of hypothetical events to make the claim that this race-neutral law nonetheless violates the Fourteenth Amendment by encouraging private parties to discriminate based on race. Movants assert that SB 2930—by permitting directors and officers to self-report their demographics, and if they choose to do so, providing that information to the public—will lead to hypothetical "public shaming" by unnamed "activist groups" that might perceive their board's demographics to be "insufficient." Pl. Mot. for Prelim. Inj. at 8; *see also* Int. Mot. for Prelim. Inj. at 4-5.

These stated harms are highly attenuated and do not rise to the level of particularity required to confer Article III standing. *See, e.g.*, *Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 642 (7th Cir. 2024) (affirming a District Court's dismissal for lack of standing where the stated injury was highly speculative and attenuated); *City of South Miami v. Governor*, 65 F.4th 631, 637 (11th Cir. 2023) ("This highly attenuated chain of possibilities which rests on speculation about the decisions of independent actors . . . does not satisfy the requirement that threatened injury must be certainly impending[.]" (internal citations omitted)); *see also* Defs. Memo. in Supp. Mot. to Dismiss Am. Compl. at 9-11. Movants have not alleged any concrete, imminent harm, and so they do not have standing to bring this suit at all, let alone secure preliminary injunctive relief. Moreover, the public may be neutral or pleased with either an organization's officers' and directors' opting out of posting demographic data or neutral or pleased with the aggregate data that an organization provides, regardless of what it shows. The hypothetical "harm" can just as easily be a hypothetical benefit—demonstrating exactly the kind of guessing Movants engage in that fails to show the imminent injury.

### ii. Plaintiff has not shown injury for its First Amendment claim.

Similarly, Plaintiff has not adequately demonstrated it has or will suffer an injury in the context of its First Amendment compelled speech claim. Neither of SB 2930's requirements—(1) that large grant-making charities collect voluntarily provided demographic information from directors and officers, and (2) make any information those directors and officers voluntarily provide available publicly—is an invasion of a legally protected First Amendment interest.

Plaintiff concedes that it would be permissible under the First Amendment for Illinois to require it to collect demographic information and submit it to the state, so its injury cannot flow from SB 2930's collection requirement. Pl. Mot. for Prelim. Inj. at 10. And the asserted injury

arising from SB 2930's requirement to post aggregated demographic information on the members' websites is merely conjectural and hypothetical, not actual or imminent. *See Lujan*, 504 U.S. at 564 n.2 ("'imminence' . . . ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending" (quotation marks omitted)). If directors and officers do not provide their demographic information, the corporations need not post anything at all on their website. *See* 805 ILCS 105/114.15(c). Plaintiff's anonymous member organizations have indicated that they publicly "critique[] . . . the relevance of race and ethnicity and the need for sex-based classifications," Pl. Mot. for Prelim. Inj. at 6, and that the members, their "boards," and their "staff" "do not want to be forced to promote these messages." Ofc. A Dec. ¶ 9; Ofc. B Dec. ¶ 9. If this is true, the law itself gives the relief they are seeking— the corporations' directors and officers can simply decline to self-identify, obviating the need to disclose any demographic information on the corporations' websites.

Based on its own briefing, Plaintiff cannot show any reasonable likelihood that SB 2930 will actually compel its members to speak. And Plaintiff's diversion of resources theory is not sufficient to establish injury where Plaintiff's members have not shown impediment to their core business activities. *See FDA v. All. for Hippocratic Med*., 602 U.S. 367, 395 (2024); Defs. Memo. in Supp. Mot. to Dismiss Am. Compl. at 10.  Plaintiff has not alleged injury on its First Amendment claim and is not entitled to a preliminary injunction. *See Speech First*, 968 F.3d at 640-41 (students failed to demonstrate standing to bring First Amendment claim where the basis for the claim was fear of reprisal for declining voluntary interview); *see also* Defs. Memo. in Supp. Mot. to Dismiss Am. Compl. at 8-10.

## II.    Even if Movants satisfy Article III standing, they are not entitled to a preliminary injunction because their claims fail on the merits.

a. **Movants are unlikely to succeed on the merits of their Equal Protection Claims.**

Movants are not entitled to a preliminary injunction because they are unlikely to succeed on the merits of their Equal Protection claims. Movants' preliminary injunction arguments suffer from the same flaws identified in Defendants' motions to dismiss: they rely on increasingly tenuous hypothetical chains of events and inapposite case law in an attempt to prove discriminatory intent where there was none, and discriminatory effect where there is none. As Movants have provided no evidence that SB 2930 requires discrimination based on race, they have not met the heightened burden required of them at the preliminary injunction stage.

In relevant part, the Equal Protection Clause prohibits governments from racially discriminating by providing that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Government decision-making based on an individual's race—whether preferential or prejudicial—implicates the Equal Protection Clause. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989). But SB 2930 is facially race-neutral, and movants do not argue otherwise. To invalidate a facially race neutral policy, plaintiffs must show that it was adopted with an "invidious discriminatory purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Movants attempt to sidestep this burden by premising their Equal Protection claims on a theory of private inducement—that is, that SB 2930 somehow encourages private persons to discriminate. This argument holds no water, as it is entirely reliant on a string of inapposite, out-of-circuit cases relating to race and gender quotas and defined hiring and recruitment goals. *See* Pl. Mot. Prelim. Inj. at 7 (citing *W.H. Scott Contr. Co., Inc. v. Jackson*, 199 F.3d 206, 215 (5th Cir. 1999)); *See* Pl. Int. Mot. Prelim. Inj. at 4 (citing *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021). These cases have no bearing on SB 2930, which does not impose any quotas or goals on

9

the large grant-making charities it covers. It does not require, or even suggest, that these corporations provide any benefit to or penalize members of particular races. It is entirely race neutral.

Troublingly, Plaintiff mischaracterizes its cited cases. At the outset of Plaintiff's motion, it cites *Alliance for Fair Board Recruitment v. SEC*, 125 F.4th 159, 166 (5th Cir. 2024) (en banc) for the proposition that the Fifth Circuit found a state law setting aspirational diversity objectives for corporate boards to be facially invalid because it discriminates. *See* Pl. Mot. Prelim. Inj. at 1. None of that is true. In *Alliance*, the Fifth Circuit assessed a challenge to two NASDAQ rules: one requiring NASDAQ-listed corporations to have racially or gender-diverse boards, and one requiring disclosure of particular demographics of NASDAQ-listed corporations. The Fifth Circuit held that those rules, approved by the SEC, were not sufficiently tied to the Securities Exchange Act, and were therefore unlawful. *See Alliance*, 125 F.4th at 184-85. It made no finding related to discrimination whatsoever.

Similarly, Plaintiff's assertion that "courts have recognized that similar disclosure rules require or encourage businesses to make discriminatory decisions when selecting board members," Pl. Mot. Prelim. Inj. 8., is willfully misleading. In the cited case, *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021), California imposed a gender-based quota and fines for noncompliance. It was not a "similar disclosure rule" in comparison to SB 2930, as SB 2930 imposes no quotas, and provides Defendants with no authority to take any action based on members of a charity declining to self-identify. In fact, SB 2930 explicitly *provides* that disclosure opt-out possibility that Plaintiff seeks here. Intervenor's motion also improperly relies on *Meland*.

In *MD/DC/DE Broadcasters Association v. FCC*, 236 F.3d 13 (D.D.C. 2001), also repeatedly cited by Movants, the FCC imposed a mandate for radio stations to utilize approved

recruitment processes, or alternatively, to report demographics of recruited persons and have that information considered in a station's license renewal process. Conversely, SB 2930 does not require any particular demographic makeup, has no bearing on a charity's hiring or licensing processes, and imposes no consequences based on information disclosed by a charity.

In short, Movants have not provided the Court with any legal or factual support for their contention that SB 2930 has a discriminatory effect. The statements submitted by anonymous officers of anonymous corporations are insufficient, *supra* at 5-6, and the bulk of their cited authority does not support their contention that SB 2930 is discriminatory.

To the extent that Movants make alternative arguments related to discriminatory purpose, those also fail. Movants have not proven that SB 2930 has a discriminatory effect or was motivated by a discriminatory purpose. *See, e.g.*, *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001) (requiring both to prove an equal protection claim). Importantly, "[d]iscriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected 'a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Id.* at 907. Movants do not argue that the defendants or proponents of SB 2930 believed that the bill would have adverse effects on an identifiable group, and chose to pass and enforce the bill for that purpose. That is because no evidence exists to make such an argument; Movants' arguments rest entirely on conjecture. Movants provide no evidence to suggest that their interpretation of statements related to diversity made by the bill's proponents actually referred to discriminatory "prioritization of certain demographics, like race." *See* Pl. Mot. Prelim. Inj. at 8. Movants have not presented anything other than loose allegations to support its contention that SB 2930 —a race neutral law—was designed to discriminate. More is

11

required of the Movants at the preliminary injunction stage.[2]

As Movants have not provided any appropriate evidence for the Court to consider, and have not cited any binding case law supporting their legal arguments, they have not met their burden to show that their Equal Protection claims are likely to succeed on the merits. As a result, the Court's inquiry as to the Equal Protection claim should end here, as Defendants have also shown in their motions to dismiss.

### b. Plaintiff is unlikely to succeed on the merits of their First Amendment claim.

As set forth above and in Defendants' Motion to Dismiss, Plaintiff has failed to show that SB 2930 will compel their members to speak. *See supra*, at 7-9; Defs. Memo. in Supp. Mot. to Dismiss Am. Compl. at 8-10. This Court's inquiry can and should end here. However, if this Court moves on to the merits, Plaintiff has not shown a likelihood of success on its First Amendment claim. First, Plaintiff concedes that the First Amendment would not prohibit a State from requiring large grant-making charities to collect demographic data from their directors and officers and submit it directly to the State. Pl. Mot. for Prelim. Inj. at 10. The only argument remaining is that requiring demographic information—if any is received—to be posted on public websites—if one exists—is unconstitutional compelled speech. But this also fails: the State is permitted to compel factual, uncontroversial, commercial speech, so long as the underlying law passes rational basis scrutiny. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Those requirements are satisfied here.

First, any self-reported demographic information is factual. Decades of case law in multiple contexts affirms this. *See*, *e.g.*, *League of United Latin Am. Citizens v. Perry*, 548 U.S.

---

[2] A race-based government decision may survive judicial review if it is narrowly tailored to meet a compelling government interest. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 206-07 (2023). Because Movants have not shown that SB 2930 is race-based, this brief does not address whether the law satisfies strict scrutiny.

399 (2006) (Voting Rights Act case involving cracking of Latino voting bloc); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307 (1977) (accepting use of statistical evidence of discrimination between racial groups because "it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of the racial and ethnic composition of the population in the community from which employees are hired." (quotation marks omitted)).[3] In addition, IDHR has not yet published the list of demographic categories to be used in compliance with SB 2930. Plaintiff cannot know what these categories might be, and so Plaintiff's arguments are hypothetical.

Second, self-reported demographic information is not controversial. Self-identification in a host of demographic categories has been used across the country for decades by federal, state, and local governments as well as private actors. For example, the United States Census has collected racial demographic information from every person living in the United States since 1790. *See* U.S. Census Bureau, "Measuring Race and Ethnicity Across the Decades: 1790-2010," https://www.census.gov/data-tools/demo/race/MREAD_1790_2010.html. It is false that "any purely factual statement that can be tied in some way to a controversial issue is, for that reason alone, controversial." *CTIA v. City of Berkeley, Cal.*, 928 F.3d 832, 845 (9th Cir. 2019). And, regardless, allowing directors and officers to optionally self-identify with demographic categories in no way requires corporations to "take sides in a heated political controversy." Pl. Mot. for Prelim. Inj. at 12. It merely requires these corporations to permit their directors and officers, if they choose to do so, to state that they belong to particular categories according to the individual's own understanding of what those categories mean.

---

[3] Plaintiff does not argue that the other demographic information included in SB 2930—gender, disability status, veteran status, sexual orientation, and gender identity—are counter-factual, waiving these arguments. *See Manning v. Sweitzer*, 891 F. Supp. 2d 961, 966-67 (N.D. Ill. 2012) (argument not raised until reply brief on motion to dismiss was waived).

13

Third, the allegedly compelled speech takes place in a commercial context. There are three "relevant considerations" courts use to determine whether certain speech is commercial: "whether (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014). "No one factor is sufficient," nor are all of them necessary. *Id.* (citing *Bolger v. Youngs Drugs Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983)). Here, the context in which the speech appears is itself an advertisement for Plaintiff's anonymous member's organizations. *Cf. Gabiola v. Sarid*, No. 16-cv-2076, 2017 WL 4264000, at *6 (N.D. Ill. Sept. 26, 2017) (website with links to purchase services was at least partially commercial speech). While the speech may not refer to a specific physical product for sale, Plaintiff's anonymous members undisputedly have an economic motivation for maintaining their websites in the way that they (allegedly) do: "to get donations." Pl. Mot. for Prelim. Inj. at 6. A communication that contains "discussions of important public issues" alongside an economic motivation can still be commercial speech; "advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger*, 463 U.S. at 67-68 (quoting *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563 n.5 (1980)).[4]

Because the speech at issue falls within the exception set forth in *Zauderer*, SB 2930 need only satisfy rational basis scrutiny. "Under this standard, a law avoids constitutional

---

[4] The Supreme Court has determined that soliciting donations is not *purely* commercial speech, but Plaintiff's cited cases dealt with flat-out restrictions on organizations' ability to solicit at all—which is not at issue here. *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 797 (1985); *Village of Schaumburg*, 444 U.S. 620, 636 (1980). Similarly, the law at issue in *Riley v. National Federation for the Blind of North Carolina* strictly regulated professional fundraisers, including limiting the amount they could charge to an arbitrary percentage of funds solicited, requiring disclosures to potential donors about the funds retained in prior campaigns, and requiring licensure for professional fundraisers. 487 U.S. 781, 784 (1988). These cases are inapposite.

scrutiny as long as it bears a rational relationship to a legitimate government interest." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013). Courts "do not require the state to actually articulate the law's purpose or produce evidence to sustain the rationality" of the law; rather, "the law is presumed constitutional," and Plaintiff has a "weighty burden" to "negative every basis which might support the law." *Id.* (cleaned up). The law will be upheld "if there is any reasonably conceivable state of facts supporting" it. *Id.* (quotation marks omitted). There is a legitimate state interest in providing potential donors with transparency about the organizations their dollars—via donations and non-profit tax status and other state-level benefits—support. *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 477-78 (7th Cir. 2012) (An "'informational interest' is sufficiently important to support disclosure requirements" in campaign finance.). SB 2930 therefore passes rational basis review, and the Movants have not met their burden to show a likelihood of success on the merits.[5]

Even if Plaintiff had shown a likelihood of success on the merits of their First Amendment claim, it would not be entitled to the relief that it apparently seeks: enjoining the law statewide as to all large grant-making charities. Plaintiff has not set out a facial challenge to SB 2930 based on the First Amendment, which would require it to show that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v.*

---

[5] Because Plaintiff has not adequately proven standing, *supra* at 3-9, and even if it had, rational basis review would apply, *supra* at 15, this brief does not address whether SB 2930 would pass strict scrutiny. But Plaintiff overstates *Riley*'s applicability with respect to the strict scrutiny analysis. In *Riley*, an "unchallenged portion of the law require[d] professional fundraisers to disclose their professional status to potential donors, thereby giving notice that at least a portion of the money contributed will be retained." 487 U.S. at 799. Thus, the State had limited interest in the *additional* disclosure of the exact percentage that the professional fundraiser retained. Here, in contrast, nothing similarly puts consumers on notice about the diversity or lack thereof of the organizations they are considering making donations to. Likewise, the Court in *Riley* noted that the "compelled disclosure" would "certainly hamper the legitimate efforts of professional fundraisers to raise money for the charities they represent," in large part because the disclosures required took place in "the context of a verbal solicitation" that would likely not give the organization "a chance to explain the figure." *Id.* 799-800. Here, in contrast, there is no reason to believe that the disclosure will unfairly "hamper" an organization's efforts because it is made on an organization's webpage where they may fully explain any additional information or context they wish to provide to consumers.

*NetChoice, LLC*, 603 U.S. 707, 723-24 (2024). Instead, Plaintiff has alleged an as-applied challenge: that *Members A and B* do not want to speak about race, and that SB 2930 nonetheless requires them to do so. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 565 (2005). Plaintiff cannot secure a state-wide injunction barring enforcement of the statute against all large grant-making charities via an as-applied challenge. *See Reiff v. Calumet City*, No. 10-cv-5486, 2014 WL 4460457, at *3 (N.D. Ill. Sept. 10, 2014). Moreover, any injunction that ran only to Plaintiff's members would be impossible to order and enforce, as Plaintiff's members are unknown to this Court and to Defendants. *See Vega v. Chi. Park Dist.*, 605 F. Supp. 3d 1086, 1095-96 (N.D. Ill. 2022) ("The injunction has to be specific enough to give the defendant fair notice of what is required[.]" (internal quotation marks omitted)).

### III.    Movants have not shown irreparable harm.

To secure preliminary injunctive relief, Plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiff has not shown any harm at all, *supra* at 6-8, much less harm that is irreparable. As stated above, Plaintiff has shown only a theoretical possibility that they will be compelled to speak—only if their directors and officers with ideological objections to demographic categories decide nonetheless to self-identify with those categories. And the possibility of irreparable injury is not enough to sustain preliminary injunctive relief. *Winter*, 555 U.S. at 22. Similarly, as set forth above, Movants have not shown that they are likely to suffer irreparable harm related to their equal protection claim, because they have shown no likelihood at all that SB 2930 discriminates based on race.

None of the unsworn documents purporting to be declarations have any evidentiary value. *See supra* at 5-6; Defs. Mot. to Strike. But even if this Court considers the unsworn

anonymous documents from Officers A and B, they merely restate allegations that, as discussed above, do not establish that harm is imminent, likely, or concrete. With respect to the equal protection allegations, the statements from Officers A and B are identical. The documents state that the officers "feel [ ] pressure" to "discriminate." This is apparently based in part on their hunch that SB 2930's "supporters will 'assess'" the corporations' "racial and ethnic statistics and try to pressure us to change the composition of our board." Ofc. A Dec. ¶¶ 10-11; Ofc. B Dec. ¶¶ 10-11. These conclusory predictive statements simply do not support an irreparable harm finding on an equal protection claim.

Movants have not cited any case law to support their apparent contention that there is a constitutional right to avoid public scrutiny of corporate governance. As this proposition is unsupported, the requirement to make information available to the public cannot constitute irreparable harm. And for its part, Intervenor relies entirely on the unsworn and infirm documents submitted by Plaintiff. It has submitted no independent evidence of irreparable harm for its equal protection claim.

Likewise, the unsworn statements from Officers A and B cannot support finding irreparable harm on their First Amendment claim. The documents state that SB 2930 "will force" the corporations to "talk with" and "categorize" their directors and officers. Ofc. A Dec. ¶¶ 6-8; Ofc. B Dec. ¶¶ 6-8. And the documents conclude that SB 2930 will require them "to publish controversial demographic information on" their websites. Ofc. A Dec. ¶ 9; Ofc. B Dec. ¶ 9. These assertions are all either conclusory or incorrect. The corporations need only provide an opportunity for directors and officers to self-identify with particular demographic categories— they need not have a conversation with their board and officers about the categories, nor do the corporations themselves have to "categorize" anyone: the categorization is done by each

17

individual for themselves on an *optional* basis. And, if the corporation, "its board, and its staff . . . do not want to" publish any data on their demographics, Ofc. A Dec. ¶ 9; Ofc. B Dec. ¶ 9, directors and officers should simply decline to self-identify. Any harm would be self-inflicted, and "self-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago,* 333 F.3d 846, 850 (7th Cir. 2003).[6]

For these reasons, Movants have failed to show likely irreparable harm flowing from their equal protection claim, and Plaintiff from its First Amendment claim.

### IV.     An injunction will not serve the public interest, and the balance of equities tips in Defendants' favor.

As to the balance of the equities and the public interest, Movants have similarly not met their burdens. The public has an interest in transparency, and as explained, *supra* at 15, enjoining SB 2930 would decrease the amount of information the public has regarding the charities it supports.

Courts have considered the importance of transparency and of maintaining the integrity of state statutes in weighing the third and fourth preliminary injunction factors. *See Tark ibn Ziyad Academy v. Islamic Relief USA*, 794 F. Supp. 2d 1044, 1059 (D. Minn. 2011) (determining that the public interest would be harmed by enjoining a state statute). "Central to our democratic process as well as our Constitution is the belief that open and transparent government, whenever possible, best serves the public interest." *Siegel v. LePore*, 120 F. Supp. 2d 1041, 1054 (S.D. Fla. 2000), *aff'd*, 234 F.3d 1163 (11th Cir. 2000). In the same way that the public has a right to know the details of this litigation, it will be served by increased transparency related to major grant-making charities. More transparency, not less, inherently promotes the public interest. Therefore,

---

[6] To the extent Movants suggest compliance costs would be the basis of irreparable harm, this also fails. *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) ("[I]njury resulting from attempted compliance with government regulation ordinarily is not irreparable harm.").

if the Court reaches the third and fourth factors, which it need not, it should determine that they

weigh in favor of Defendants, and against a preliminary injunction.

**V.      Movants are not entitled to the scope of the injunction they seek.**

Finally, the Court should deny Movants' motions because the relief they seek is

overbroad and premature. The injunction they request would be unenforceable as to certain

defendants, who are not properly named and have no enforcement authority over SB 2930, and

as to Plaintiff's members, who remain anonymous to the Court, the parties, and the public.

Further, this matter is not ripe for an injunction, as IDHR has not yet issued its demographic

categories.

Movants both named the Illinois Secretary of State as a defendant in this action;

Intervenor also named the Illinois Governor. But the requirements of causation and redressability

are not satisfied as to the Secretary and the Governor. *See* Defs. Memo. in Supp. Mot. to Dismiss

at 13-15. SB 2930 does not assign any role to the Governor; his only alleged connection to this

case is Intervenors' allegation of the Governor's general enforcement authority as head of the

executive branch. Because "the governor has no role to play in the enforcement of the challenged

statute[], nor does the governor have the power to nullify legislation once it has entered into

force," the "inability to show that he bears any legal responsibility for the flaws they perceive in

the system" will "bar[] the plaintiff['s] action for prospective injunctive relief against the

governor." *Hearne v. Bd. of Educ. of Chi.*, 185 F.3d, 770, 777 (7th Cir. 1999). Similarly, because

SB 2930 requires no administration and imposes no duties on the Secretary, any harm Movants

allege are not redressable by an injunction prohibiting the Secretary from enforcing SB 2930. *See*

*Taylor v. McCament*, 875 F.3d 849 (7th Cir. 2017).

With regard to the First Amendment claim, Plaintiff apparently seeks a universal

injunction despite only asserting an *as-applied* argument, which is not permitted. *See supra*, at 15-16. And as discussed above, a narrower injunction only as to the two member organizations would be impossible to enforce, given their anonymity. *See id.*

Finally, IDHR has not yet issued its list of demographic categories. As a result, an injunction barring Defendants from enforcing SB 2930 would be premature.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court **deny** Plaintiff's Motion for Preliminary Injunction, and **deny** Plaintiff-Intervenor's Motion for Preliminary Injunction.

Dated: May 6, 2025

KWAME RAOUL
*Attorney General of Illinois*

*/s/ Holly F.B. Berlin*
Karyn L. Bass Ehler
Elizabeth H. Jordan
Holly F.B. Berlin
Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, IL 60603
312-814-3000
karyn.bassehler@ilag.gov
elizabeth.jordan@ilag.gov
holly.berlin@ilag.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2025, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

By: */s/ Holly F.B. Berlin*
Holly F.B. Berlin
Assistant Attorney General