IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>*Plaintiff*,<br><br>and<br><br>UNITED STATES OF AMERICA,<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>STATE OF ILLINOIS; JB PRITZKER, in his official capacity as Governor of the State of Illinois; JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; and ALEXI GIANNOULIAS, in his official capacity as Secretary of State of the State of Illinois,<br><br>*Defendants*. | Case No. 1:25-cv-00669<br><br>Judge Coleman |

## **AMENDED COMPLAINT IN INTERVENTION OF THE UNITED STATES**

### INTRODUCTION

Upon passage of Senate Bill 2930 ("SB 2930"), a law that pressures nonprofits to consider candidates' race when selecting officers and directors, Illinois State Representative Edgar Gonzalez, Jr., stated: "When we can see the data that is shared because of SB 2930, *elected officials and community organizations can be better partners to those nonprofit organizations* that want to *prioritize the recruitment of* talented individuals from our state's

*diverse communities*."[1] This encouragement by the State of Illinois for nonprofits to discriminate on the basis of race when selecting directors and officers is forbidden by the Equal Protection Clause of the Fourteenth Amendment, and there is no diversity exception to this. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (citation and internal quotation marks omitted) ("Eliminating racial discrimination means eliminating all of it. And the Equal Protection Clause, we have accordingly held, applies without regard to any differences of race, of color, or of nationality—it is universal in [its] application.").

SB 2930 violates the Equal Protection Clause by forcing charitable organizations to gather and post demographic information, including race, for their directors and officers on the organizations' publicly available websites. *See* 805 Ill. Comp. Stat. § 105/114.15. This is a case of immense public importance precisely because "[e]liminating racial discrimination means eliminating all of it." *Students for Fair Admissions*, 600 U.S. at 206. SB 2930 does the opposite, and the Court should enjoin its enforcement. The United States of America ("United States") files this Amended Complaint in Intervention to protect its citizens and ensure that the Constitution's guarantee of equal protection is enforced.

## JURISDICTION

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2. The United States is authorized to intervene in this action pursuant to 42 U.S.C. § 2000h-2. The Attorney General of the United States has certified this case is of public importance. U.S. Mot. to Intervene, Ex. 1, Doc. 17-1.

---

[1] *Governor JB Pritzker Approves Nation-Leading Policy Regarding Diversity of Nonprofit Boards*, Equality Illinois (July 1, 2024), https://perma.cc/AJ47-NRGX (emphases added).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b). Each of the current Defendants has an office in the Northern District, and the State of Illinois "'resides' in every district within its borders." *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citations omitted). Additionally, nonprofits must send the forms required by SB 2930 to this District.

4. This Court has the authority to enter a declaratory judgment and to provide injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

5. Plaintiff-Intervenor is the United States.

6. Defendant State of Illinois ("Illinois") is one of the fifty states of the United States.

7. Defendant JB Pritzker ("Pritzker") is the Governor of Illinois. As Governor, Pritzker has "the supreme executive power" in Illinois and is "responsible for the faithful execution of the laws," including SB 2930. *See* Ill. Const., art. V, § 8. Pritzker is sued in his official capacity.

8. Defendant Kwame Raoul ("Raoul") is the Attorney General of Illinois. As Attorney General, Raoul is responsible for enforcing SB 2930, *see* 15 Ill. Comp. Stat. § 205/4, and overseeing the registration of charitable organizations subject to SB 2930, *see* 225 Ill. Comp. Stat. § 460/2. Raoul is sued in his official capacity.

9. Defendant Alexi Giannoulias ("Giannoulias") is the Secretary of State of Illinois. As Secretary of State, Giannoulias is responsible for administering SB 2930, *see* 805 Ill. Comp. Stat. § 105/101.05, and promulgating rules and regulations to enforce SB 2930, *see* 805 Ill. Comp. Stat. § 105/101.55(b). Giannoulias may issue interrogatories to nonprofits to determine

whether they have complied with SB 2930 and shall certify to the Attorney General "all interrogatories and answers thereto which disclose a violation" of SB 2930. *See* 805 Ill. Comp. Stat. § 105/101.35. Giannoulias is sued in his official capacity.

10. Defendant James Bennett ("Bennett") is the Director of the Illinois Department of Human Rights. As Director, Bennett is responsible for "discharg[ing] the duties" of the Illinois Department of Human Rights, *see* 20 Ill. Comp. Stat. § 5/5-20, which is required to "work with community partners to prepare and publish a standardized list of demographic classifications" for reporting the demographic information required by SB 2930, *see* 805 Ill. Comp. Stat. § 105/114.15(b). Bennett is sued in his official capacity.

### FACTS

11. On January 1, 2025, Illinois became the first state in the nation to *require* nonprofits to maintain "aggregated demographic information of the corporation's directors and officers, including race, ethnicity, gender, disability status, veteran status, sexual orientation, and gender identity" on their "publicly available website for at least 3 years after it is posted." *See* 805 Ill. Comp. Stat. § 105/114.15(a).

12. This requires nonprofits to ask each of its directors and officers for their race and other demographic information, including sexual orientation. A director or official may decline to disclose the information, but a nonprofit *must* request it. *Id*.

13. SB 2930's primary aim is "for diversity and inclusion to be embraced within the non-profit sector."[2]

---

[2] *See Johnson Law Highlights Diversity and Inclusion of Nonprofits*, Sen. Adriane Johnson (July 1, 2024), https://perma.cc/V5QJ-ARY3.

14. SB 2930's main Senate sponsor, Senator Adriane Johnson stated: "The goal is to *nudge* . . . nonprofits to diversify their boards";[3] "I want this law to not only support, but encourage more diversity in [nonprofits]."[4]

15. State Representative Edgar Gonzalez, Jr., SB 2930's main sponsor in the House of Representatives, affirmed Illinois' diversity interest in enacting SB 2930, stating that "[t]he diverse range of communities nonprofits serve should be handled by a diverse range of people . . . ."[5]

16. Governor Pritzker doubled down on this goal when signing SB 2930, stating that the reporting and posting requirement is "to encourage nonprofits to reflect the diversity of the communities they support."[6] According to Governor Pritzker, "*[t]hese statistics . . . are intended* to assess each nonprofit's leadership strengths and opportunities for growth and *to implement strategies to recruit* qualified individuals *from diverse communities* for board service."[7]

17. Proponents of SB 2930 also highlighted SB 2930's diversity goals, stating that with these posting requirements, "community groups and community leaders *can see how diverse* the boards of directors of foundations are and *proactively work with foundations to ensure that their leadership reflects the communities* . . . ."[8]

---

[3] *Lawmakers Target Nonprofit Boards*, Politico (June 4, 2024), bit.ly/4hVy90f (emphasis added).

[4] *See Johnson Law Highlights Diversity and Inclusion of Nonprofits*, *supra* note 2.

[5] *Gov. Pritzker Signs LGBTQ+ Affirming Bills in Honor of Pride Month*, Gov. JB Pritzker (June 30, 2024), https://perma.cc/6SFJ-XVVZ.

[6] *Id.*

[7] *Id.* (emphases added).

[8] *Lawmakers Target Nonprofit Boards*, *supra* note 3.

18. SB 2930's gathering and posting requirements show "whether a large charity's directors reflect the communities whose interests it purports to advance . . . ." Def.'s Mem. in Supp. of Mot. to Dismiss, Doc. 56, at 1.

19. Illinois aims for the nonprofits covered by SB 2930 to have directors and officers whose demographic information, including race, is proportional to the demographics of the communities they serve.

20. Illinois seeks to accomplish its diversity and inclusion aims by requiring nonprofits to gather and publicly display demographic data, including race, for its directors and officers.

21. SB 2930's gathering and posting requirements pressure nonprofits to avoid "public shaming" by considering demographic information and selecting directors and officers on the basis of race rather than merit and factors relevant to the goals and purposes of the nonprofits. *See Meland v. Weber*, 2 F.4th 838, 847 & n.4 (9th Cir. 2021) ("SB 826 pressures shareholders in other ways as well. Meland alleges that SB 826 also enforces its requirements through 'public shaming' by requiring the California Secretary of State *to publish lists of compliant and noncompliant corporations*.") (emphasis added and citation omitted).

22. SB 2930 also encourages nonprofits to consider race in their selections of directors and officers to ensure Illinois and community organizations treat them as "better partners."[9]

---

[9] *Governor JB Pritzker Approves Nation-Leading Policy Regarding Diversity of Nonprofit Boards*, *supra* note 1.

23. Organizations rank nonprofits on factors that include racial diversity in board representation for use by donors to determine which nonprofits to support.[10] By forcing nonprofits to gather and post demographic information, including race, on their directors and officers, SB 2930 makes these data available for such ranking organizations to pressure nonprofits to have diverse board representation to get a high ranking to increase donations.

24. The world's largest evaluator of nonprofits has stated that by "evaluat[ing] a charity's commitment to *racial equity*" and emphasizing "*inclusive leadership*" and "*diverse board representation*" in its ranking methodology,[11] it "anticipate[s] that nonprofits *will place greater emphasis* on becoming more equitable, more inclusive, and *more diverse* . . . ."[12]

25. SB 2930 forces nonprofits to choose whether to discriminate based on race or to risk lost partnership opportunities, donations, and public criticism, if not outright harassment, if they are viewed as lacking sufficient racial and other diversity in their leadership based on their posted data.

26. Qualified candidates for director and officer positions whose race is not viewed as contributing to the overall racial diversity of a nonprofit's directors and officers will not be selected by nonprofits making selections based on race to avoid adverse consequences for failure to have what they believe will be viewed as a sufficiently diversified leadership.

---

[10] *Culture & Community: Equity Strategies Checklist*, Charity Navigator, https://perma.cc/2N5Z-TKMU ("This assessment evaluates a charity's commitment to racial equity" and "emphasizes inclusive leadership [and] diverse board representation . . . ."); *see also* Amended Verified Complaint, Doc. 59, ¶ 32.

[11] *See Culture & Community: Equity Strategies Checklist*, *supra* note 10 (emphases added).

[12] *Nonprofits Receive Charity Navigator Scores for DEI Strategies and Impact*, NonProfit PRO (Mar. 28, 2022), https://perma.cc/UA5N-6A48 (emphases added) (discussing Charity Navigator's updated "Culture & Community" beacon).

27. Candidates who are not selected because of their race will lose life and career-changing opportunities to serve on the boards of these nonprofits, including opportunities to impact their communities, broaden their connections and build valuable networks, and gain new expertise and skill sets.

## CLAIM FOR RELIEF – EQUAL PROTECTION CLAUSE

28. The United States respectfully incorporates the allegations set forth in all prior paragraphs of this Amended Complaint in Intervention.

29. The Equal Protection Clause of the Fourteenth Amendment prohibits Illinois from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

30. "[T]he 'core purpose' of the Equal Protection Clause [is] 'do[ing] away with all governmentally imposed discrimination based on race'" and "'[o]ne of the principal reasons race is treated as a forbidden classification is that it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities.'" *Students for Fair Admissions*, 600 U.S. at 206, 220 (citations omitted).

31. And Illinois "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation and internal quotation marks omitted).

32. By requiring nonprofits to gather and publicize demographic data on its directors and officers, SB 2930 encourages nonprofits to discriminate based on race when selecting their directors and officers to ensure they are not viewed as lacking sufficient racial diversity in their leadership based on their posted data. In fact, proponents of the Bill emphasized that SB 2930

8

allows "elected officials and community organizations" to be *better* partners to those nonprofits who select their directors or officers on the basis of race.[13]

33. Furthermore, to avoid public shaming, SB 2930 is likely to cause nonprofits to give candidates for directors and officers preferential treatment based on their race.

34. SB 2930 will harm qualified candidates for director and officer positions who, because they would not contribute to a nonprofit's racial diversity, are not picked by nonprofits making selections based on race.

35. SB 2930 must survive strict scrutiny because it encourages nonprofits who discriminate on the basis of race and promotes the ones that follow Illinois' edict. *See Students for Fair Admissions*, 600 U.S. at 206 (citation omitted) ("[E]xception[s] to the Constitution's demand for equal protection must survive a daunting two-step examination known in our cases as 'strict scrutiny.'").

36. To pass strict scrutiny, Illinois first must show that SB 2930 "is used to 'further compelling governmental interests.'" *Id.* at 206-07 (citation omitted). Such interests identified by the Supreme Court include "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" and "avoiding imminent and serious risks to human safety in prisons . . . ." *Id.* at 207.

37. Illinois cannot demonstrate either of these interests. Illinois does not profess to remediate any instance of past discrimination in nonprofits' selection of directors and officers through SB 2930. In fact, neither Illinois nor SB 2930's supporters have expressly alleged, much less established, that actual discrimination by nonprofits in the selection of their leadership has

---

[13] *Governor JB Pritzker Approves Nation-Leading Policy Regarding Diversity of Nonprofit Boards*, *supra* note 1.

occurred. And "avoiding imminent and serious risk to human safety in prisons" is an interest with no applicability to this case. Rather, statements by SB 2930's main sponsors and by Governor Pritzker show that Illinois intends for SB 2930 to encourage diversity, an interest that is not compelling for strict scrutiny purposes.

38. SB 2930 also fails the second strict scrutiny step, which would require Illinois to show its use of race is "'narrowly tailored'—meaning 'necessary'—to achieve its interest." *Id.* (citation omitted). Illinois cannot establish that requiring nonprofits to gather and publicize the demographics of their directors and officers is necessary to encourage diversity.

39. Illinois has taken an overbroad approach of requiring *all* qualifying nonprofits to publicize the demographics of their directors and officers without any evidence of past, or reasonably expected future, discrimination by any nonprofit. *See MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 21-22 (D.C. Cir. 2001). This "sweeping requirement" is not narrowly tailored to achieve a diversity interest. *See id.*

40. SB 2930 cannot pass strict scrutiny, and its use of race violates the Equal Protection Clause of the Fourteenth Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests this Court:

A. Declare that SB 2930 discriminates on the basis of race in violation of the Equal Protection Clause of the Fourteenth Amendment.

B. Permanently enjoin Defendants from implementing or enforcing SB 2930.

C. Preliminarily enjoin Defendants from implementing or enforcing SB 2930 by July 1, 2025.

D. Award any applicable costs and fees.

E. Award such other additional relief as justice may require.

Dated: May 6, 2025

                                                      Respectfully submitted,

                                                      CHAD MIZELLE  
                                                      Acting Associate Attorney General

                                                      ABHISHEK S. KAMBLI  
                                                      Deputy Associate Attorney General

                                                      HARMEET K. DHILLON  
                                                      Assistant Attorney General  
                                                      Civil Rights Division

                                 By: /s/ Hilary F. Pinion  
                                                     HILARY F. PINION  
                                                     LOUIS WHITSETT  
                                                     Senior Trial Attorneys  
                                                     U.S. Department of Justice  
                                                     Civil Rights Division  
                                                     950 Pennsylvania Avenue, N.W.  
                                                     Washington, D.C. 20530  
                                                     Telephone: (202) 514-2151  
                                                     Email: Hilary.Pinion@usdoj.gov

                                                     *Attorneys for Plaintiff-Intervenor*  
                                                     *United States of America*