IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br>        *Plaintiff*,<br>and<br><br>UNITED STATES OF AMERICA,<br>        *Plaintiff-Intervenor*,<br>v.<br><br>STATE OF ILLINOIS; JB PRITZKER, in his official capacity as Governor of the State of Illinois; JAMES BENNETT, in his official capacity as Director of the Illinois Department of Human Rights; KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; and ALEXI GIANNOULIAS, in his official capacity as Secretary of State of the State of Illinois,<br>        *Defendants*. | Case No. 1:25-cv-00669<br><br>Judge Coleman |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ITS AMENDED COMPLAINT IN INTERVENTION**

**I.  INTRODUCTION**

The United States' Amended Complaint in Intervention (Amended Complaint), Doc. 74, plausibly alleges SB 2930 encourages nonprofits to discriminate on the basis of race when selecting their officers and directors in violation of the Equal Protection Clause, and as an intervenor of right, the United States has standing in this case. Defendants' arguments to the contrary lack merit, and this Court should deny Defendants' Motion to Dismiss the Amended Complaint in Intervention, Doc. 85.

## II. ARGUMENT

Defendants contend the United States has not sufficiently alleged facts supporting standing in its Amended Complaint—a facial challenge under Federal Rule of Civil Procedure (Rule) 12(b)(1). Defs.' Mot. to Dismiss Int.'s Am. Compl. (MTD), Doc. 86, at 3-5. In evaluating this facial challenge, this Court must apply the same analysis it also will use to review Defendants' challenge to the Amended Complaint under Rule 12(b)(6), accepting as true all material allegations in the Amended Complaint and construing the Amended Complaint in favor of the United States. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citations omitted). The Amended Complaint must "plausibly give rise to an entitlement of relief," which it does, and the Court should not dismiss the Amended Complaint under either Rule 12(b)(1) or 12(b)(6). *See id.* at 174 (internal quotation marks and citation omitted).

### A. The Amended Complaint Should Not Be Dismissed Under Rule 12(b)(1) Because the United States Has Standing as an Intervenor of Right and as a Sovereign Upholding Its Interests and Preventing Violations of Its Citizens' Constitutional Rights.

As an intervenor of right pursuing the same relief sought by Plaintiff, the United States is not required to demonstrate Article III standing. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."). *See also Revelis v. Napolitano*, 844 F. Supp. 2d 915, 925 (N.D. Ill. 2012) (citing *Transamerica Ins. Co. v. South*, 125 F.3d 392, 396 (7th Cir. 1997)) ("[T]he Seventh Circuit has observed that any interest of such magnitude as to allow intervention of right is sufficient to satisfy the Article III standing requirement."). The United States seeks the same forms of relief as Plaintiff—a declaratory judgment and preliminary and permanent injunctive relief—and this Court should deny

Defendant's motion to dismiss under Rule 12(b)(1). *See* Am. Compl., at 10; *see also* Pl.'s Am. Verified Compl., Doc. 59, ¶ 61.

Further, the United States intervened of right under Rule 24(a)(1) based on 42 U.S.C. § 2000h-2, which grants the United States an unconditional right to intervene in cases "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race . . . if the Attorney General certifies that the case is of general public importance" as she did in this case. Am. Compl., ¶ 2. In passing 42 U.S.C. § 2000h-2, Congress recognized the direct and substantial interest of the United States in enforcing violations of the Equal Protection Clause against its citizens and provided the United States with an avenue to participate in cases precisely like this one. *See* H. Rep. No. 914, pt. 2, at 16 (1963) ("These provisions are vitally necessary if all Americans are to enjoy the equal protection of the laws."). When the United States intervenes in a case pursuant to 42 U.S.C. § 2000h-2, it may continue in the case as a party plaintiff even if the original plaintiffs disappear "so long as such participation serves the statutory purpose." *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 431 (1976). The United States' participation in this case serves the statutory interest in enforcing violations of the Equal Protection Clause against its citizens. Defendants did not oppose the United States' intervention, thus effectively conceding the United States has an interest in the litigation, yet they now allege the United States has not established standing. This Court should reject Defendants' attempts to create an artificial barrier that would render meaningless the United States' unconditional statutory right to intervene.

The United States also has standing in this case because it represents its citizens as *parens patriae* and upholds its sovereign interest in preventing violations of its citizens' constitutional rights, here its citizens' right under the Equal Protection Clause to be free from

3

race-based discrimination. *See Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923) ("the United States . . . represents [its citizens] as *parens patriae*"). *See also In re Debs*, 158 U.S. 564, 584 (1895) (concluding that "injury to the general welfare [ ] is often of itself sufficient to give [the United States] a standing in court"); *United States v. Texas*, 566 F. Supp. 3d 605, 639 (W.D. Tex. 2021) (finding "the doctrine of *parens patriae* sufficient to establish the United States' injury for standing purposes" and "in the alternative, that the concepts underpinning *In [r]e Debs* and its progeny likewise establish a particularized injury to sovereign interests of the United States").

The Amended Complaint also plausibly alleges injury in fact. "[T]he United States suffers a concrete harm to its sovereignty when its laws are violated. . . . When state governments enact laws that impugn the United States' sovereignty, a personal injury to the United States arises." *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 526-27 (W.D. Tex. 2022). As discussed in Section II.B, SB 2930's race-based requirements encourage nonprofits to discriminate on the basis of race in violation of the Equal Protection Clause and impugn the United States' sovereignty. Am. Compl., ¶¶ 18-26.

Finally, Defendants improperly conflate the threshold standing injury with the merits of the United States' claim, for instance by disputing the United States' claim that SB 2930 "violates the Fourteenth Amendment by encouraging private parties to discriminate based on race." *See* MTD, at 5. *See also United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 645 (7th Cir. 2015) (stating that success on the merits is "a different matter" than whether parties have standing). As discussed in Section II.B, the Amended Complaint plausibly alleges SB 2930 violates the Equal Protection Clause by encouraging nonprofits to discriminate based on race.

**B.     The Amended Complaint Should Not Be Dismissed Under Rule 12(b)(6) Because the United States Plausibly Alleges SB 2930 Encourages Discrimination Based on Race.**

Accepting as true all material allegations in the Amended Complaint and construing the Amended Complaint in favor of the United States as required at the motion to dismiss stage, the Amended Complaint plausibly alleges SB 2930 includes race-based requirements that encourage nonprofits to discriminate based on race in violation of the Equal Protection Clause. Am. Compl., ¶¶ 11-27, 32. The Amended Complaint includes multiple quotes by SB 2930's sponsors and Governor Pritzker that show Illinois enacted SB 2930 to encourage nonprofits to balance their boards based on *race* and other demographics to make their boards' demographics proportional to the demographics, including *race*, of the communities they serve. Am. Compl., ¶¶ 13-17. These statements show Illinois intends for the posted demographic data, *including race*, "to assess each nonprofit's leadership strengths," Am. Compl., ¶ 16, to allow "community groups and community leaders [to] see how diverse the board of directors of foundations are," Am. Compl., ¶ 17, and to "nudge . . . nonprofits to diversify their boards," Am. Compl., ¶ 14. Nonprofits are expected "to implement strategies to recruit" diverse individuals, Am. Compl., ¶ 16, with elected officials and community organizations becoming "better partners," Am. Compl., at 1 & ¶ 22, to those nonprofits that want to "prioritize recruitment" based on candidates' *race* and other demographic information, Am. Compl., at 1. As heralded by Governor Pritzker, both the Illinois state senator and representative sponsors of SB 2930, and proponents of SB 2930, SB 2930's ultimate diversity goal aims to balance nonprofits' leadership based on *race* and other demographic information to "reflect the diversity of the communities they support," Am. Compl., ¶ 16, and "include a diverse range of people," Am. Compl., ¶ 15.

Defendants acknowledge that "an arbitrary government-mandated quota requiring corporations to hire or fire particular numbers of individuals based on their race would implicate the Equal Protection Clause." MTD, at 6. The United States agrees. However, as alleged in the Amended Complaint, the protection provided by the Equal Protection Clause from race-based discrimination extends beyond government-mandated quotas to state action, like SB 2930, that encourages private persons to discriminate based on race. Am. Compl., ¶¶ 31-33.

The Supreme Court recognized the dangers of state-mandated reporting of a person's race when it struck down a state law requiring ballots to designate the race of candidates as a violation of the Equal Protection Clause. *Anderson v. Martin*, 375 U.S. 399, 401-02 (1964). Requiring ballots to disclose candidates' race indicates that race is an "important" consideration that might "[d]ecisively influence" citizens to vote based on the candidates' race, "induc[ing] racial prejudice." *Id.* SB 2930 similarly includes race as a factor and "promotes the ultimate discrimination which is sufficient to make it invalid." Am. Compl., ¶¶ 21-27; s*ee Anderson*, 375 U.S. at 404 (citation omitted).

Contrary to Defendants' claims, the United States does not "effectively concede[ ]" SB 2930 does not "requir[e] decision-making based on race." MTD, at 6 (citing Am. Compl., ¶ 12). Rather, the Amended Complaint states in the cited paragraph that nonprofits must request race and other demographic information from each of their directors and officers, who may decline to provide the information. Am. Compl., ¶ 12. Whether individual directors and officers may decline to provide their race data is distinct from nonprofits' obligations under SB 2930 to request and to post race and other demographic information. SB 2930 obligates nonprofits to post whatever race and demographic information they receive from their directors and officers regardless of how many of their directors and officers provide the requested information. If all

6

their directors and officers decline to provide race information, SB 2930 still requires nonprofits to post the race information, if only that the information is unknown, on their publicly available websites because SB 2930 provides no posting exceptions. As the Amended Complaint plausibly alleges, these requirements encourage nonprofits to discriminate based on race. Am. Compl. ¶¶ 20-26.

Defendants also argue the United States has not sufficiently alleged an Equal Protection Clause violation because the Amended Complaint has not shown SB 2930 has a discriminatory purpose or discriminatory effect. MTD, at 9 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001)). However, *Chavez* is inapposite because it did not involve a statute that explicitly utilized race as a factor as does SB 2930. Like the unlawful state law requiring ballots to designate the race of candidates that applied equally to both black and white candidates, SB 2930 unlawfully mandates race reporting and promotes race-based decision making, and the United States does not have to show SB 2930 has a discriminatory purpose or effect. *See Anderson*, 375 U.S. at 403-04. Nonetheless, the Amended Complaint plausibly alleges Illinois enacted SB 2930 to encourage nonprofits to balance their boards based on race and other demographics to make their boards' demographics proportional to the demographics of the communities they serve—a discriminatory, race-based purpose. Am. Compl., ¶¶ 13-20. SB 2930 also has a discriminatory effect on candidates whose race is not viewed as contributing to the overall racial diversity of a nonprofit's directors and officers who will not be selected due to SB 2930's posting requirement. Am. Compl., ¶¶ 21-27.

Defendants misconstrue the United States' reliance on *Norwood v. Harrison*, 413 U.S. 455, 465 (1973). MTD, at 8. The Amended Complaint does not rely on *Norwood* for a "theory that disclosure laws like SB 2930 impermissibly encourage discrimination" as Defendants claim.

7

*See* MTD, at 8; Am. Compl., ¶ 31. A disclosure law like SB 2930 was not considered in *Norwood*. Rather, in considering a state program that aided private schools—and concluding such aid could not constitutionally be provided to racially discriminating private schools—the *Norwood* Court stated "that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood*, 413 U.S. at 465 (citation and internal quotation marks omitted). The Amended Complaint relies on *Norwood* for this proposition. Am. Compl., ¶ 31. The suggested certification to the state agency referenced by the *Norwood* Court has no relevance to the Amended Complaint's citation of *Norwood*. And, to the extent Defendants rely on the certification referenced in *Norwood* to contend disclosure laws are constitutional, MTD, at 8, that certification is inapposite to SB 2930. The certification discussed in *Norwood* would have been made directly to a state agency to determine whether a school seeking to participate in the program was engaged in racially discriminatory practices and would not include an overbroad mandatory posting requirement like SB 2930. *See Norwood*, 413 U.S. at 471.

Defendants also misconstrue the United States' reliance on *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021). MTD, at 8. The Amended Complaint relies on *Meland* only to show how the *disclosure* requirements in SB 2930 pressure nonprofits to avoid public shaming by discriminating on the basis of race, referencing language in *Meland* about public shaming related to SB 826's *disclosure* requirements. *See* Am. Compl., ¶ 21. Defendants also attempt to distinguish *MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13 (D.C. Cir. 2001). MTD, at 8. However, Defendants' attempt is misplaced because the United States relies on *MD/DC/DE Broadcasters Ass'n* only to support its allegation that SB 2930 fails strict scrutiny because it is not narrowly tailored, Am. Compl., ¶ 39, while Defendants decline to address whether SB 2930

8

satisfies strict scrutiny, MTD, at 6 n.3. The Amended Complaint plausibly alleges a violation of the Equal Protection Clause, and this Court should deny Defendants' motion to dismiss under Rule 12(b)(6).

### C. Governor Pritzker and Secretary Giannoulias Are Properly Named as Defendants.

Governor JB Pritzker (Governor) is properly named in this action. The Governor has "the supreme executive power" in Illinois and is "responsible for the faithful execution of the laws." *See* Ill. Const., art. V, § 8. SB 2930 is enforced by Illinois' executive branch over which Pritzker maintains ultimate enforcement authority. Defendants rely on *Hearne v. Bd. of Educ. of City of Chicago* in alleging that the Governor's ultimate enforcement authority is insufficient to confer standing to sue. MTD, at 10 (citing 185 F.3d 770,777 (7th Cir. 1999)). However, the United States was not a plaintiff in *Hearne*, which addressed whether the Governor had immunity under the Eleventh Amendment, *Hearne's* Eleventh Amendment immunity analysis does not apply to the United States, and the Governor is properly named in this action.

Illinois Secretary of State Giannoulias (Secretary) is also properly named in this action. The Secretary is responsible not only for administering the General Not For Profit Corporation Act of 1986 (NFP Act), *see* 805 Ill. Comp. Stat. § 105/101.05, as Defendants acknowledge, but also for promulgating rules and regulations to enforce the NFP Act, including SB 2930, *see* 805 Ill. Comp. Stat. § 105/101.55(b). Am. Compl., ¶ 9. The Secretary also may issue interrogatories to nonprofits to determine whether they have complied with SB 2930 and shall certify to the Attorney General "all interrogatories and answers thereto which disclose a violation" of SB 2930. *See* 805 Ill. Comp. Stat. § 105/101.35. Am. Compl., ¶ 9. Accordingly, the Secretary is properly named in this action and should not be dismissed.

### D. This Court Should Expeditiously Grant the United States' and Plaintiff's Motions for Preliminary Injunction.

The United States has caused no delay related to its preliminary injunction motion, and the United States' request for a ruling on its preliminary injunction motion by July 1, 2025, is not arbitrary. The United States timely filed its Amended Complaint, which has had no impact on the preliminary injunction motions filed by the United States and Plaintiff. On April 9, 2025, the day after the United States filed its preliminary injunction motion, the Court scheduled oral argument on both preliminary injunction motions for May 23, 2025. That schedule remained unchanged, even after the United States filed its Amended Complaint, and oral argument was held as scheduled on May 23, 2025.

SB 2930 went into effect on January 1, 2025, and covered nonprofits whose fiscal years end in the summer or fall have already been required, or will have soon approaching deadlines, to post the race and other demographic data of their directors and officers. U.S. Mem. Supp. Mot. for Prelim. Inj. (PI Mem.), Doc. 50, at 3. Nonprofits that operate on a calendar year must post their race and other demographic data in July 2025. PI Mem., at 3. Given these deadlines, nonprofits have already been forced to decide, and must continue to decide, whether to select directors and officers based on their experience, skills, and organizational commitment or to also consider the race and other demographic data of the candidates to ensure they are viewed as having sufficient diversity in their leadership. PI Mem., at 5. Thus, immediate injunctive relief from SB 2930's discriminatory requirements is needed, and the request for action by July 1, 2025 is not arbitrary.

The Court need not rule on Defendants' motions to dismiss before ruling on the preliminary injunction motions. Defendants allege the same jurisdictional issues in their opposition to the United States' and Plaintiff's motions for preliminary injunction that they allege

10

in their motions to dismiss. *See* Opp'n to Mots. for Prelim. Inj., Doc. 73, at 3-8; Defs.' Mot. to Dismiss Pl.'s Am. Compl., Doc. 69, at 4-10; MTD, at 4-12. Moreover, the Court must resolve questions of subject matter jurisdiction before considering the merits question pursuant to a motion for preliminary injunction. *Indiana Rt. to Life v. Morales*, 112 F.4th 466, 470 (7th Cir. 2024). Because the Court will resolve the jurisdictional questions when considering whether to grant the preliminary injunction motion, the Court should grant a preliminary injunction regardless of whether it has ruled on the motions to dismiss.

### III. CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny Defendants' motion to dismiss the Amended Complaint.

Date: June 4, 2025　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　CHAD MIZELLE
　　　　　　　　　　　　　　　　　　　　　　　Acting Associate Attorney General

　　　　　　　　　　　　　　　　　　　　　　　ABHISHEK S. KAMBLI
　　　　　　　　　　　　　　　　　　　　　　　Deputy Associate Attorney General

　　　　　　　　　　　　　　　　　　　　　　　HARMEET K. DHILLON
　　　　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　　　　Civil Rights Division

　　　　　　　　　　　　　　　　　　　　　By: /s/ Hilary F. Pinion
　　　　　　　　　　　　　　　　　　　　　　　HILARY F. PINION
　　　　　　　　　　　　　　　　　　　　　　　LOUIS WHITSETT
　　　　　　　　　　　　　　　　　　　　　　　Senior Trial Attorneys
　　　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice
　　　　　　　　　　　　　　　　　　　　　　　Civil Rights Division
　　　　　　　　　　　　　　　　　　　　　　　950 Pennsylvania Avenue, N.W.
　　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20530
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 514-2151
　　　　　　　　　　　　　　　　　　　　　　　Email: Hilary.Pinion@usdoj.gov

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff-Intervenor*
　　　　　　　　　　　　　　　　　　　　　　　*United States of America*